TRUJILLO & TRUJILLO, APLC
Robert Trujillo, Esq. (CA SBN 148975)
Melody Trujillo, Esq. (CA SBN 165218)
41593 Winchester Road, Suite 201
Temecula, CA 92590
Tel: 951-296-9529
Email: trulaw@trujillo-law.us

Suzanne Skolnick, Esq. (CA SBN 211076)
2888 Loker Avenue East, Suite 110-F
Carlsbad, CA 92010
Tel.    (760) 405-4397
Email: suzanne@skolnicklawgroup.com

Lewis Khashan, Esq. (CA SBN 275906)
41593 Winchester Road, Suite 201
Temecula, CA 92590
Tel: 951-775-7279
Email: lewis@khashanlaw.com

Attorneys for Plaintiffs Eddy Soriano,
By and through his conservator, Sherly
Tolentino, et al.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Eddy Soriano, by and through his Conservator, Sherly Tolentino; Marites de Guzman; , | Case No. 5:16-cv-155 BRO (SP) |
| Plaintiffs, | **PLAINTIFF'S FIRST AMENDED COMPLAINT FOR DAMAGES AND VIOLATIONS OF CIVIL RIGHTS** |
| v. | |
| COUNTY OF RIVERSIDE; CITY OF MURRIETA; STANLEY SNIFF, Sheriff of Riverside County; WILLIAM DI YORIO, Undersheriff of Riverside County; JULIO IBARRA, | **JURY TRIAL DEMANDED** |

1

Senior Safety Coordinator for )
Riverside County; JERRY )
GUTIERREZ, Corrections Assistant )
Sheriff; VIRGINIA BUSBY, Captain )
of Robert Presley Detention Center; )
Murrieta Police Department OFFICER )
JEREMY MEADOWS; OFFICER H. )
ADAMS; OFFICER ELLIOT; )
OFFICER TOMPKINS; OFFICER )
MATTHEW MOZINGO; OFFICER )
IRVING; TYLER SCOTT JACKSON; )
and DOES 1-125, )
 Defendants. )
_____ )

## PRELIMINARY STATEMENT

This action against the County of Riverside, City of Murrieta, and individual agents and/or employees of the County of Riverside, arises due to the Defendants' improper placement of Plaintiff Eddy Soriano, a known mental health patient in need of mental health treatment and care, into custody within the jail system, and Defendants' subsequent failure to protect Plaintiff Eddy Soriano from severe physical abuse inflicted upon him at the hand of his jail cellmate. As a result of Defendants' various actions and inactions, Plaintiff Eddy Soriano is now in a permanent vegetative state, and will remain so for the duration of his lifetime.

## JURISDICTION

1. This action arises under Title 42 of the United States Code, Section 1983. Jurisdiction is conferred upon this Court by Title 28 of the United States Code, Section 1331 and 1343. In addition, this Court has pendent and

supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over the state law claims

alleged in this complaint.

## VENUE

2.      The unlawful acts and practices alleged herein occurred in the

County of Riverside, State of California, within this judicial district.  Therefore,

venue lies in the United States District Court for the Central District of California.

## CLAIMS REQUIREMENT

3.      Plaintiffs have complied with the requirements of California

Government Code section 900, et seq., where an action for state court claims is

filed against a public entity and its employees.

## CONSERVATORSHIP ESTABLISHED

4.      On September 1, 2015, Letters of Conservatorship were issued by the

Superior Court of California for the County of Los Angeles, naming Sherly

Tolentino as conservator over the person and estate of Eddy Soriano.

## PARTIES

5.      Plaintiff, Eddy Soriano, an individual, by and through his

conservator, Sherly Tolentino (hereafter "Soriano"), is, and at all times mentioned

herein was, a resident of the State of California.

6.      Plaintiff Marites de Guzman (hereafter "de Guzman") is the wife of

Plaintiff Eddy Soriano and is, and at all times mentioned herein was, a resident of

3

the State of California.

7.      Defendant County of Riverside (hereinafter "County") is a public entity which is responsible for and administers the Robert Presley Detention Center (hereinafter "RPDC") through its agency, the Riverside County Sheriff's Department (hereinafter "RCSD").  County promulgates policies and practices for the housing, custody, care, safekeeping and protection of inmates in the RPDC. The County and Does 1 -25 constructed, owned, operated, repaired, maintained and controlled the buildings in which the RPDC is located.

8.      Defendant City of Murrieta is a public entity city located in California and is the employer of officers of the Murrieta Police Department.

9.      Defendant Stanley Sniff (hereafter "Sniff") is, and at all times herein mentioned was, the Sheriff of Riverside County.  As Sheriff of Riverside County, Sniff has ultimate supervision and management responsibility over the five jails, or correctional facilities in Riverside County, all managed by the Sheriff's Department Corrections Division.  Sniff was elected as Sheriff in 2010 and took office in January, 2011.  Sheriff Sniff ran, operated, oversaw, administered, supervised and was otherwise responsible for the conduct of the RCSD at the RPDC.  Defendant Stanley Sniff is sued both individually and in his official capacity.

10.      Defendant William Di Yorio (hereafter "Di Yorio") is, and at all

PLAINTIFF'S FIRST AMENDED COMPLAINT FOR DAMAGES, VIOLATIONS OF CIVIL RIGHTS

CASE NO.: 5:16-CV-155 BRO (SP)

times herein mentioned was, the Undersheriff of Riverside County. Di Yorio ran, operated, oversaw, administered, supervised and was otherwise responsible for the conduct of the RCSD at the RPDC.

11. Defendant Julio Ibarra (hereafter "Ibarra") is, and at all times herein mentioned was, the Senior Safety Coordinator for the County of Riverside. Ibarra ran, operated, administered, supervised and was otherwise responsible for safety policies and procedures for the Riverside County jail system, including the RPDC.

12. Defendant Jerry Gutierrez (hereafter "Gutierrez") is, and at all times herein mentioned was, the Corrections Assistant Sheriff of Riverside County. Gutierrez ran, operated, oversaw, administered, supervised and was otherwise responsible for the conduct of the RCSD at the RPDC.

13. Defendant Virginia Busby (hereafter "Busby") is, and at all times herein mentioned was, Captain at the RPDC and ran, operated, oversaw, administered, supervised and was otherwise responsible for the conduct of the RCSD at the RPDC.

14. Defendant Tyler Scott Jackson (hereafter "Jackson") is, and at all times herein mentioned, was a resident of the State of California and an inmate at RPDC.

15. Does 26-50 are County of Riverside officials who ran, oversaw, administered, supervised and were otherwise responsible for the conduct of the

RPDC.

16.     Does 51 -100 are and were Sheriff's deputies or other employees or agents of the County of Riverside employed at the RPDC.

17.     Defendant Jeremy Meadows (hereafter "Meadows") is, and at all times stated herein was, a police officer for the City of Murrieta, (Badge Number 833), and a resident of California.

18.     Defendant Officer H. Adams (Badge Number 642) (hereafter "Adams") is, and at all times stated herein was, a police officer for the City of Murrieta, and a resident of California.

19.     Defendant Corporal Elliot (Badge Number 664) (hereafter "Elliot") is, and at all times stated herein was, a police officer for the City of Murrieta, and a resident of California.

20.     Defendant OfficerTompkins (Badge Number 659) (hereafter "Tompkins") is, and at all times stated herein was, a police officer for the City of Murrieta, and a resident of California.

21.     Defendant Matthew Mozingo (hereafter "Mozingo") is, and at all times stated herein was, a police officer for the City of Murrieta (Badge Number 441) and a resident of California.

22.     Defendant Officer Irving (Badge Number 894) (hereafter "Irving") is, and at all times stated herein was, a police officer for the City of Murrieta, and a

resident of California.

23.     Plaintiff is ignorant of the true names and capacities of Defendant Does 1 – 125, inclusive, and therefore sue these defendants by such fictitious names.  Plaintiffs are informed and believe, and based thereon allege, that each defendant so named is responsible in some manner for the injuries and damages suffered by Plaintiffs.  Plaintiffs will amend this complaint to state the true names and capacities of defendants Does 1 – 125, inclusive, when they have been ascertained.

24.     Does 101-125 are and were at the time of the facts giving rise to this complaint, employees or agents of the City of Murrieta.

25.     At all times mentioned herein, each named Doe Defendant 1 through 100, inclusive, was the agent or employee of Defendant County of Riverside and, in doing the things alleged, was acting within the course and scope of such agency or employment and with the actual or implied permission, consent, authorization and approval of the County.

26.     At all times mentioned herein, each named Doe Defendant 101 through 125, inclusive, was the agent or employee of Defendant City of Murrieta and, in doing the things alleged, was acting within the course and scope of such agency or employment and with the actual or implied permission, consent, authorization and approval of the City.

PLAINTIFF'S FIRST AMENDED COMPLAINT FOR DAMAGES, VIOLATIONS OF CIVIL RIGHTS

CASE NO.: 5:16-CV-155 BRO (SP)

27.     Plaintiff Eddy Soriano is the father of five adult children named: Gerlie S. Hall, Sheryl Soriano, Emily Soriano, Rhoderick Soriano, and Donald Soriano.  In the event that Plaintiff Eddy Soriano succumbs to his injuries and passes away while this action is pending, Plaintiffs will amend the complaint to allege a cause of action for wrongful death brought on behalf of each of Plaintiff Eddy Soriano's children and Plaintiff Marites de Guzman.

## STATEMENT OF FACTS

28.     Plaintiff Eddy Soriano was a 64 year old man suffering from mental health conditions, who had an extensive prior history of undiagnosed night terrors. Prior to the incident, Mr. Soriano lived in Long Beach, California.  On numerous prior occasions, during these night terror episodes, Mr. Soriano would roam the Long Beach neighborhoods in a confused and disoriented state, and would be picked up by Long Beach police department officers.  According to standard operating procedures of the Long Beach police department, the officers would impose a Welfare and Institutions Code section 5150 involuntary psychiatric hold on Mr. Soriano, so that Mr. Soriano could receive appropriate mental health attention and care, as opposed to arresting Mr. Soriano and placing him into custody with the general jail population.

29.     On February 8, 2015, Plaintiff Eddy Soriano suffered a night terror episode while visiting friends in Murrieta, California.  During the episode, Mr.

Soriano left his friend's home and began wandering the streets of Murrieta in a confused state.  Witnesses stated that he was seeing things that weren't there, appeared confused, and believed that he was being chased by individuals who were trying to hurt him.  On the night in question, Mr. Soriano ran frantically through the neighborhood on Lido Drive in Murrieta, before ultimately climbing into, and attempting to hide himself in, an unlocked vehicle.  Officers from the City of Murrieta Police Department received a 911 call that a delusional man was running around who suffered from dementia.  Officers from the City of Murrieta Police Department responded to the call and, despite knowing: (a) Plaintiff Eddy Soriano's prior mental health history and (b) having information from witnesses that Mr. Soriano suffered from dementia; Murrieta police officers did not impose an involuntary psychiatric hold on Mr. Soriano and instead, placed him under arrest and booked him into the Southwest Detention Center in Murrieta, California.

30.    Mr. Soriano was thereafter transferred from the Murrieta Police Department to Southwest Detention Center and ultimately, into the custody of County and RCSD at the RPDC.  While incarcerated at RPDC, Mr. Soriano was transferred from the general inmate population into a mental health cell.  The mental health cell is one that is reserved for inmates exhibiting a mental health condition.  In the mental health cell in which Mr. Soriano was placed, there is an

9

intercom button that an inmate is supposed to be able to use to communicate with the deputies. The alarm portion of the audio component/intercom button in Mr. Soriano's cell had been disconnected since 2006 by order of Defendant Gutierrez. All of the deputies at RPDC that had ever covered surveillance for the mental health cell in which Mr. Soriano was placed, were aware – since the time it was disconnected in 2006 - that the alarm portion of the audio component/intercom system did not function, yet repeatedly signed off on safety check sheets that the system was in good working order and condition. At no time did any deputy inform Mr. Soriano that the alarm portion of the audio component/intercom button in his cell did not function.

31. At any given moment, there are supposed to be three officers responsible for surveilling the cells. These officers are known as "Pod 1", "Pod 2" and "Pod runner" respectively. The Pod 1 officer must remain at his post constantly and watches the video screens linked to the cells at all times. The cells, including the one in which Mr. Soriano was housed, were equipped with video surveillance and should have been equipped with a functioning alarm portion of the audio/intercom system. Each hour, a deputy of the RCSD is also required to perform a physical visual inspection of each cell, including the mental health cell in which Mr. Soriano was housed.

32. Prior to, and on the date of this incident, Defendant Jackson was a

10

violent, mentally unstable inmate at RPDC in the custody of County and RCSD. Defendant Jackson, aged 23, was some 41 years younger than Plaintiff Eddy Soriano (aged 64), and was significantly larger than Eddy Soriano in stature and build. At all times herein mentioned, County, RCSD and its employees knew or should have known that Jackson was a danger to other persons in custody at RPDC, and a danger to Mr. Soriano in particular. Due to Jackson's prior violence, there were orders that Jackson be housed alone prior to the time that he was housed in the same cell with Eddy Soriano. RPDC officials disregarded the substantial risk to Plaintiff Eddy Soriano's health and safety when they housed Eddy Soriano, who had never previously been incarcerated, with Defendant Jackson, a convicted felon.

33.     Prior to, and on the date of this incident, Defendants knew or should have known that Mr. Soriano had a mental health condition and suffered from night terrors that would cause Mr. Soriano to act out at times and behave in an irrational manner.

34.     On February 18, 2015, while incarcerated at RPDC in Riverside, California, Plaintiff Eddy Soriano was placed in the mental health cell that lacked a functioning alarm component of the audio/intercom system, along with Defendant Jackson. On February 18, 2015, while both men were in their shared cell, Defendant Jackson severely beat Plaintiff Eddy Soriano for a period of

11

approximately 37 minutes.  Defendant Jackson inflicted severe injuries to Plaintiff Eddy Soriano, including, but not limited to, skull and facial fractures and severe brain damage.  During the attack, Plaintiff Eddy Soriano desperately attempted to summon help from the deputies by pressing the intercom button at least 3 times, however, no deputies responded to his call.  During the attack, the "Pod 1" officer on duty should have received video images of Plaintiff Eddy Soriano being attacked in his cell, and would have received video images of Plaintiff Eddy Soriano being attacked in his cell, had the Pod 1 officer been performing his assigned duties.  Yet, for 37 minutes, no officer responded to Mr. Soriano's aid.  During the 37 minute attack, RCSD deputies were required to conduct regularly scheduled, physical, walk-through, visual inspections of Mr. Soriano's cell, however, either no physical, visual inspection was ever performed as scheduled, or the officer performing the inspection ignored Mr. Soriano's pleas for help.  As result of the severe beating Mr. Soriano received while in the care and custody of the County of Riverside, Mr. Soriano is now in permanent vegetative state and requires round-the-clock medical care and attention and will require such care for the remainder of his life.

## DAMAGES

35.    As a proximate result of Defendants' conduct, Plaintiff Eddy Soriano suffered permanent traumatic brain injury resulting in pain and suffering, past and

12

future medical expenses, past and future wage loss, and past and future lost

earning capacity.

36.    Plaintiffs have found it necessary to engage the services of counsel to

vindicate their rights under the law.  Plaintiffs are therefore entitled to an award of

all attorneys' fees and litigation costs incurred in pursuing this action for violation

of civil rights.

## FIRST CAUSE OF ACTION

**(Violation of 42 U.S.C. § 1983  - brought by Soriano Against Defendants**

**County; Stanley Sniff; William Di Yorio; Julio Ibarra; Jerry Gutierrez;**

**Virginia Busby; and Does 26 – 50)**

37.    Plaintiff Eddy Soriano realleges and incorporates by reference

paragraphs 1-36 of this complaint.

38.    Defendants' above alleged actions and failures to act resulted from

policies, customs and practices of Defendants County; Sniff; Di Yorio; Ibarra;

Gutierrez; Busby and Does 26-50, including, but not limited to, the following:

      a.  County; Sniff; Di Yorio; Ibarra; Gutierrez; Busby and Does 26-
          50, caused and permitted the RPDC to be overcrowded.  The
          overcrowding contributed to causing inmate on inmate violence.

      b.  County; Sniff; Di Yorio; Ibarra; Gutierrez; Busby and Does 26-
          50, required violent and/or mentally unstable inmates to be housed

in the same cell as other inmates.

c.  County; Sniff; Di Yorio; Ibarra; Gutierrez; Busby and Does 26-50, failed to assign sufficient Sheriff's deputies to the RPDC in order to provide adequate monitoring and supervision of the inmates.

d.  County; Sniff; Di Yorio; Ibarra; Gutierrez; Busby and Does 26-50,   failed to properly train the Sheriff's deputies assigned to the RPDC so that the deputies did not have sufficient knowledge or skills to adequately monitor and supervise the inmates.

e.  County; Sniff; Di Yorio; Ibarra; Gutierrez; Busby and Does 26-50, failed to provide jail buildings with functioning alarm components in the audio/intercom systems so that Sheriff's deputies could respond promptly and communicate with inmates that needed assistance.

f.  County; Sniff; Di Yorio; Ibarra; Gutierrez; Busby and Does 26-50, failed to properly use the video surveillance systems that were available to them for supervising the cells while on duty at RPDC.

g.  County; Sniff; Di Yorio; Ibarra; Gutierrez; Busby and Does 26-50, ignored video surveillance systems that were available to them for supervising cells while on duty at RPDC.

PLAINTIFF'S FIRST AMENDED COMPLAINT FOR DAMAGES, VIOLATIONS OF CIVIL RIGHTS

CASE NO.: 5:16-CV-155 BRO (SP)

h.  County; Sniff; Di Yorio; Ibarra; Gutierrez; Busby and Does 26-50, failed to follow standard operating procedures regarding performing physical visual inspections of the cells at RPDC.

i.  County; Sniff; Di Yorio; Ibarra; Gutierrez; Busby and Does 26-50 failed to perform their job duties in monitoring the inmates, supervising the inmates, and inspecting and maintaining the inmate audio and visual monitoring systems.

39.    In 2013, prior to Plaintiff's brutal attack, at least three occurrences of inmate-on-inmate violence resulting in death or severe injuries at the County of Riverside's Southwest Detention Center facility occurred.  The three occurrences included (a) the severe beating of Vernon Vasquez on January 10, 2013; (b) the death of Julio Negrete on May 9, 2013 and (c) the severe beating of William Ray Espinoza on November 14, 2013.  All three occurrences stemmed from County's policy, practice and custom of overcrowding inmates, improperly classifying inmates, housing violent and mentally unstable inmates together in cells, failing to follow standard operating procedures regarding performing visual inspections of inmates and inadequately monitoring and maintaining audio and visual monitoring systems.

40.    At the time that Plaintiff Eddy Soriano was attacked, County of Riverside jail facilities ranked second in California for in-custody deaths

according to Department of Justice statistics and since Plaintiff Eddy Soriano's attack, in-custody deaths in the County of Riverside have continued to rise.

41.     Since Plaintiff's brutal attack, inmate Robert Anthony Hearn died from an attack by his cellmate on March 17, 2015 at County's Larry D. Smith Correctional Facility.

42.     Based on the frequency, characteristics and locations of the foregoing alleged occurrences of severe inmate-on-inmate violence throughout County's various jail facilities, Plaintiff alleges that County's actions and inactions related to overcrowding inmates, improperly classifying inmates, housing violent and mentally unstable inmates together in cells, failing to follow standard operating procedures regarding performing visual inspections of inmates and inadequately monitoring and maintaining audio and visual monitoring systems, are widespread in usage and constitute policies, practices and customs of County.

43.     In doing the acts complained of above, County; Sniff; Di Yorio; Ibarra; Gutierrez; Busby and Does 26-50, acted under color of State law to deprive Plaintiff Eddy Soriano of certain constitutionally protected rights, including, but not limited to, the right not to be deprived of life or liberty without due process of law, as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution.

44.     In acting and failing to act as hereinabove alleged, Defendants, and

16

each of them, were deliberately indifferent to the substantial risk that Jackson

would assault and severely injure Plaintiff Eddy Soriano.

45.    As a proximate result of Defendants' wrongful conduct, Plaintiff

Eddy Soriano suffered the injuries and damages as set forth.

46.    In acting as hereinabove alleged, the conduct of Defendants Sniff; Di

Yorio; Ibarra; Gutierrez; Busby and Does 26-50, was performed knowingly,

intentionally, maliciously, amounting to despicable conduct by reason of which

Plaintiffs are entitled to an award of punitive damages in a just and reasonable

sum.

### SECOND CAUSE OF ACTION

### (42 U.S.C. §1983 – Brought by Soriano Against Does 51-100)

47.    Plaintiff Eddy Soriano realleges and incorporates by reference

paragraphs 1 through 46 of this Complaint.

48.    In doing the acts complained of, Defendants Does 51-100 acted under

the color of state law to deprive the Plaintiff Eddy Soriano of certain

constitutionally protected rights including, but not limited to, the right not to be

deprived of life or liberty without due process of law, as guaranteed by the Fifth

and Fourteenth Amendments to the United States Constitution.

49.    In acting and failing to act as hereinabove alleged, Defendants Does

51 – 100, and each of them, were deliberately indifferent to the substantial risk

17

that Jackson would assault and severely injure Plaintiff Eddy Soriano.

50.     As a proximate result of defendants' wrongful conduct, Plaintiff

Eddy Soriano suffered injuries and damages as set forth.


**THIRD CAUSE OF ACTION**

**(42 U.S.C. § 1983 – Brought by Soriano Against Sniff, Di Yorio;**

**Ibarra; Gutierrez; Busby and Does 26- 50)**

51.     Plaintiff Eddy Soriano realleges and incorporates by reference

paragraphs 1 – 50 of this Complaint.

52.     Based on other occurrences of severe inmate-on-inmate violence at

several County jail facilities, including the severe beatings of Vernon Vasquez and

William Ray Espinoza and the death of Julio Negrete, County; Sniff; Di Yorio;

Ibarra; Gutierrez; Busby and Does 26- 50, by and through their supervisory

officials and employees, have been given notice on repeated occasions of a pattern

of ongoing constitutional violations and practices by Defendants 51-100 and other

agents and employees of the County, consisting in part of indifference to the

safety of inmates in jail as well as deliberate indifference to the serious medical

needs of its prisoners.  Despite said notice, defendants County; Sniff; Di Yorio;

Ibarra; Gutierrez; Busby and Does 26-50 have demonstrated deliberate

indifference to this pattern and practice of constitutional violations by failing to

take necessary, appropriate or adequate measures to prevent the continued

perpetuation of said pattern of conduct.  This lack of adequate supervisorial

response by Defendants County; Sniff; Di Yorio; Ibarra; Gutierrez; Busby and

Does 26-50 demonstrate the existence of an informal custom or policy which

tolerates and promotes the continuing improper placement of inmates and the

violation of civil rights of persons incarcerated in the RPDC.

53.     The acts of Defendants 51-100 alleged herein are the direct and

proximate result of the deliberate indifference of Defendants County; Sniff; Di

Yorio; Ibarra; Gutierrez; Busby and Does 26-50 and their supervisory officials

and employees to violations of Constitutional rights of persons incarcerated in the

RPDC by Does 51-100 and other agents and employees of the County at RPCD.

Plaintiff Eddy Soriano's injuries and damages were foreseeable and a proximate

result of the deliberate indifference of the County;  Sniff; Di Yorio; Ibarra;

Gutierrez; Busby and Does 26-50 to the pattern, practices, customs and policies

described above.

54.     In acting as hereinabove alleged, the conduct of Sniff; Di Yorio;

Ibarra; Gutierrez; Busby and Does 26-50 was performed knowingly, maliciously,

amounting to despicable conduct by reason of which plaintiffs are entitled to an

award of punitive damages in a just and reasonable sum.

PLAINTIFF'S FIRST AMENDED COMPLAINT FOR DAMAGES, VIOLATIONS OF CIVIL RIGHTS

CASE NO.: 5:16-CV-155 BRO (SP)

## FOURTH CAUSE OF ACTION

**(State Law Claim for Negligence – Brought by Soriano and de Guzman**

**Against Defendants County; and Does 51-100)**

55.     Plaintiff Eddy Soriano and Plaintiff de Guzman reallege and incorporate by reference paragraphs 1 - 54 of this complaint.

56.     At all times mentioned herein, County and Does 51-100 were subject to a duty of due care to monitor and supervise inmates of the RPDC. County and Does 51-100 also had a duty to take all reasonably necessary steps to ensure Plaintiff Eddy Soriano's personal security while he was an inmate at RPDC.

57.     Under California Government Code Sections 845.6; 820(a) and Section 815.2, Defendant County and Does 51-100 had a duty to take reasonable action to summon medical care when Does 51-100 knew, or had reason to know that Plaintiff Eddy Soriano required immediate medical care.

58.     Under California Government Code Sections 856, 820(a) and Section 815.2, Defendant County and Does 51-100 had a duty to use due care in carrying out a determination to confine Plaintiff Eddy Soriano and the terms and conditions of Eddy Soriano's confinement while at RPDC.

59.     On the day of the incident, County and Does 51-100 negligently failed to exercise due care in monitoring and supervising Plaintiff Eddy Soriano and Defendant Tyler Scott Jackson by:  failing to properly observe and/or

20

supervise Soriano and Jackson in their cell; by failing to respond to calls for help

from Plaintiff Eddy Soriano; by failing to make physical inspections and visual

inspections of the cell in which Soriano and Jackson were housed at reasonable,

timely intervals; by failing to follow operating procedures and policies requiring

periodic visual inspections of the cells at RPDC; by failing to properly classify

Soriano and Jackson such that both men were improperly placed in the same cell;

by failing to attend to the cell in which Soriano and Jackson were housed; by not

paying attention to the cell in which Soriano and Jackson were housed; and by

failing to summon for, and administer, prompt and adequate medical attention to

Soriano which further contributed to the severity of his injuries.

60.    Plaintiff Eddy Soriano and Plaintiff Marites de Guzman allege on

information and belief that at the time of the incident, Does 51-100 were agents

and/or employees of Defendant County and in doing the acts and omissions

alleged herein, were acting within the course and scope of their employment with

Defendant County.  Pursuant to Government Code section 815.2(a), Defendant

County is therefore vicariously liable for the acts and omissions of its employees

as alleged herein.

61.    At all times relevant herein, the acts and omissions of Defendant

County's employees were a substantial factor in causing Plaintiff Eddy Soriano's

harm and such acts and omissions were carried out by Defendant County's

21

employees in the course and scope of their employment with Defendant such that Defendant County is vicariously liable for Plaintiff Eddy Soriano's injuries and damages.

62.     As a proximate result of Defendants' wrongful conduct, Plaintiff Eddy Soriano suffered injuries and damages as set forth herein.

63.     At all relevant times herein, Plaintiff Marites de Guzman and Plaintiff Eddy Soriano were wife and husband.

64.     As a proximate result of Defendants' wrongful conduct, Plaintiff Marites de Guzman suffered a loss of consortium due to Plaintiff Eddy Soriano's injuries.

## FIFTH CAUSE OF ACTION

### (Dangerous Condition of Public Property Brought by Soriano and de Guzman against County, DOES 1-25 and DOES 51-100)

65.     Plaintiff Eddy Soriano and Plaintiff Marites de Guzman reallege and incorporate by reference paragraphs 1 - 64 of this complaint.

66.     The buildings constituting the RPDC were constructed, owned, operated, maintained, repaired and controlled by County, and private contractors Does 1-25 and County employees Does 51-100.

67.     At the time of the incident, the buildings constituting the RPDC generally, and the cell in which Plaintiff Eddy Soriano was housed in particular,

PLAINTIFF'S FIRST AMENDED COMPLAINT FOR DAMAGES, VIOLATIONS OF CIVIL RIGHTS

CASE NO.: 5:16-CV-155 BRO (SP)

were in a dangerous condition, as defined in Government Code section 830 in that their condition created a substantial risk of injury when used with due care in a manner in which it was reasonably foreseeable that they would be used.  The cell that housed Plaintiff Eddy Soriano, did not have a functioning alarm component of the audio/intercom system such that inmates housed in the cell were unable to summon help as needed and those deputies that were supposed to be monitoring the cells, were unable to adequately monitor the cell due to the lack of an alarm portion of the audio/intercom system.  Not having a functioning audio/intercom system, kept deputies from adequately monitoring the cells because it would fail to alert them, as it did in this case, when they were improperly away from their posts.

68.    Plaintiffs Eddy Soriano and Plaintiff Marites de Guzman are informed and believe and based thereon allege, that Defendant County, Does 1 to 25 and Does 51-100, including Defendant Jerry Gutierrez, knew or should have known that the alarm portion of the audio/intercom system was not functioning in Eddy Soriano's cell since Defendant Jerry Gutierrez ordered the audio component/intercom button in Mr. Soriano's cell to be disconnected in 2006. Defendant County, by and through its agents and employees, including Defendant Gutierrez, repeatedly ignored notices, studies, and recommendations prior to the date that Eddy Soriano was brutally attacked that the alarm portion of the

audio/intercom system should be reconnected.  All of the deputies at RPDC that had ever covered surveillance for the mental health cell in which Mr. Soriano was placed, were aware – since the time it was disconnected in 2006 - that the alarm portion of the audio component/intercom system did not function, yet repeatedly signed off on safety check sheets that the system was in good working order and condition.

69.    Despite knowledge by County, Does 1 – 25 and Does 51-100, that the alarm portion of the audio/intercom system in the cell was not functioning, County, Does 1-25 and Does 51-100 failed to warn Plaintiff Soriano that the alarm portion of the audio/intercom system did not work, thereby exposing Plaintiff Soriano to a serious risk of harm.

70.    The dangerous condition and the negligent failure to warn thereof, as alleged hereinabove, were a proximate cause of the injuries to Plaintiff Eddy Soriano and Plaintiff Marites de Guzman stated herein by allowing a confrontation between Jackson and Plaintiff Eddy Soriano to occur while they were both housed in their cell without being heard by the Sheriff's deputies responsible for monitoring the cell and supervising the conduct and safety of Jackson and Soriano in the RPDC.  The dangerous condition and negligent failure to warn thereof created a reasonably foreseeable risk of the kind of injuries which were incurred by Plaintiff Eddy Soriano and Plaintiff Marites de Guzman.  The

24

dangerous condition and failure to warn was created by the negligent or wrongful acts or omissions of County, Does 1 to 25 and Does 51-100.  County, Does 1 to 25 and/or Does 51-100 had actual or constructive notice of the dangerous condition under Government Code section 835.2 a sufficient time prior to the injury to have taken measures to protect against the dangerous conditions.

71.     Plaintiff Eddy Soriano and Plaintiff Marites de Guzman allege on information and belief that at the time of the incident, Does 1-25 and Does 51-100 were agents and/or employees of Defendant County and in doing the acts and omissions alleged herein, were acting within the course and scope of their employment with Defendant County.  Pursuant to Government Code section 815.2(a), Defendant County is therefore vicariously liable for the acts and omissions of its employees as alleged herein.

72.     At all times relevant herein, the acts and omissions of Defendant County and its agents/employees were a substantial factor in causing Plaintiff Eddy Soriano's harm and such acts and omissions were carried out by Defendant County's agents/employees in the course and scope of their employment with Defendant such that Defendant County is vicariously liable for Plaintiff Eddy Soriano's injuries and damages.

73.     At all relevant times herein, Plaintiff Marites de Guzman and Plaintiff Eddy Soriano were wife and husband.

74.    As a proximate result of Defendants' wrongful conduct, Plaintiff Marites de Guzman suffered a loss of consortium due to Eddy Soriano's injuries.

## SIXTH CAUSE OF ACTION

### (42 U.S.C. § 1983 Brought by Soriano Against

### City of Murrieta for Failure to Train)

75.    Plaintiff Eddy Soriano realleges and incorporates by reference paragraphs 1 - 74 of this complaint.

76.    Plaintiff Eddy Soriano was deprived of his civil rights as a result of Defendant City of Murrieta's (hereafter, "City") failure to train its officers and employees in the appropriate procedure for detaining individuals with mental illness.

77.    Defendant City's training program for officers of the Murrieta Police Department was inadequate in that it did not include methods by which officers could identify, assess and classify individuals that are suffering from mental illness at the moment that an individual is being detained by City police officers for alleged criminal conduct. Specifically, Defendant City's training program was inadequate to teach officers when a particular individual should be processed according to Welfare and Institutions Code 5150 as opposed to being booked and processed as a criminal detainee through the Murrieta Police Department.

78.    Defendant City knew, because of a pattern of similar violations, or

26

should have known, that the inadequate training program was likely to result in a

deprivation civil rights, including, among others:  the right to not be deprived of

life or liberty without due process of law, as guaranteed by the Fifth and

Fourteenth Amendments to the United States Constitution and the right to be

secure from unreasonable searches and seizures under the Fourth Amendment to

the United States Constitution.

79.     On February 8, 2015 Defendant Meadows and Defendant Adams

responded to a dispatch concerning Plaintiff Eddy Soriano for purposes of

conducting a "welfare check".  Defendants Elliot, Tompkins, Mozingo and Irving

then also responded to the call.  Defendant City's officers were further advised

through dispatch *prior to* interacting with Plaintiff Eddy Soriano on February 8,

2015, that he had dementia and appeared confused.  At the time that Defendants

Meadows, Adams, Elliot, Tompkins, Mozingo and Irving first approached

Plaintiff Eddy Soriano, they knew or should have known that he had no prior

criminal record and that he suffered from a mental condition.

80.     The conduct of the six officers at the time that Plaintiff Eddy Soriano

was brought into custody by Murrieta Police Department indicates that City's

failure to adequately train officers in appropriately handling welfare checks on

mentally disabled adults is a widespread policy, practice or custom within

Defendant City's police department given the following facts:  (a) all six officers

responding to the dispatch failed to process Plaintiff Eddy Soriano pursuant to Welfare and Institutions Code Section 5150, despite knowing that Plaintiff Eddy Soriano was (a) mentally disabled (b) had no criminal record and (c) had a prior history of numerous 5150 encounters through the Long Beach Police Department.

81.    Defendant City, by and through its agents and employees, knew that placing a mentally disabled individual who had no history of violence into custody with the general inmate population would create a substantial risk of serious harm to Plaintiff Soriano's health and safety.  Despite this, Defendant City, by and through the actions of its officers Meadows, Adams, Elliot, Tompkins, Mozingo and Irving, acted with deliberate indifference to Plaintiff Soriano's health, safety, and personal security when they processed Plaintiff Soriano as a regular inmate instead of following Welfare and Institutions Code 5150 procedures.

82.    But for Defendant City's actions by and through officers of the Murrieta Police Department, Plaintiff Eddy Soriano would not have been in custody and would not have been placed in a cell with Defendant Jackson.

83.    As a result of Defendant City's conduct in failing to properly train its police officers, City and Defendants Meadows, Adams, Elliot, Tompkins, Mozingo and Irving violated Plaintiff Eddy Soriano's right not to be deprived of life and liberty without due process of law under the Fifth and Fourteenth Amendments to the United States Constitution and his right to be secure from

unreasonable searches and seizures under the Fourth Amendment when they took Plaintiff Eddy Soriano into custody and processed him as a regular inmate, rather than processing him under Welfare and Institutions Code Section 5150.

84.    As a proximate cause of the conduct of Defendant City and Defendants Meadows, Adams, Elliot, Tompkins, Mozingo and Irving, Plaintiff Eddy Soriano was harmed and suffered the injuries and damages alleged herein.

## SEVENTH CAUSE OF ACTION

**(42 USC 1983 Claim by Plaintiff Eddy Soriano Against Defendants Meadows, Adams, Elliot, Tompkins, Mozingo, Irving and DOES 101-125)**

85.    Plaintiff Eddy Soriano realleges and incorporates by reference paragraphs 1 - 84 of this complaint.

86.    On February 8, 2015 Defendant Meadows and Defendant Adams responded to a dispatch concerning Plaintiff Eddy Soriano for purposes of conducting a "welfare check".  Defendants Elliot, Tompkins, Mozingo and Irving then also responded to the call.  Defendant City's officers were further advised through dispatch *prior to* interacting with Plaintiff Eddy Soriano on February 8, 2015, that he had dementia and appeared confused.  At the time that Defendants Meadows, Adams, Elliot, Tompkins, Mozingo and Irving first approached Plaintiff Eddy Soriano, they knew or should have known that he had no prior

criminal record and that he suffered from a mental condition.

87.     Defendants Meadows, Adams, Elliot, Tompkins, Mozingo and Irving and Does 101-125, knew that placing a mentally disabled individual who had no history of violence into custody with the general inmate population would create a substantial risk of serious harm to Plaintiff Soriano's health and safety.  Despite this knowledge, Defendants Meadows, Adams, Elliot, Tompkins, Mozingo, Irving and Does 101-125 acted with deliberate indifference to Plaintiff Soriano's health, safety, and personal security when they processed Plaintiff Soriano as a regular inmate instead of following Welfare and Institutions Code 5150 procedures.

88.     After arresting Plaintiff Eddy Soriano, Defendants Meadows, Adams, Elliot, Tompkins, Mozingo, Irving and Does 101-125, failed to adequately investigate, evaluate or analyze Plaintiff Eddy Soriano's mental health condition.

89.     In doing the acts complained of, Defendants Meadows, Adams, Elliot, Tompkins, Mozingo, Irving and Does 101-125 acted under the color of state law to deprive the Plaintiff Eddy Soriano of certain constitutionally protected rights including, but not limited to, the right not to be deprived of life or liberty without due process of law, as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution and the right to be secure from unreasonable searches and seizures guaranteed by the Fourth Amendment to the United States Constitution.

90.     In acting and failing to act as hereinabove alleged, Defendants Meadows, Adams, Elliot, Tompkins, Mozingo, Irving and Does 101-125, and each of them, were deliberately indifferent to the substantial risk that Plaintiff Eddy Soriano would be injured when confined with other prisoners in the general prison population.

91.     As a proximate result of defendants' wrongful conduct, Plaintiff Eddy Soriano suffered injuries and damages as set forth when he was brutally attacked by Defendant Jackson.

## EIGHTH CAUSE OF ACTION

**(State Law Claim for Negligence Brought by Plaintiffs Soriano and de Guzman against Defendant City of Murrieta and Defendants Meadows, Adams, Elliot, Tompkins, Mozingo, Irving and Does 101-125)**

92.     Plaintiff Eddy Soriano and Plaintiff de Guzman reallege and incorporate by reference paragraphs 1 - 91 of this complaint.

93.     At all times stated herein, Defendant City, and Defendants Meadows, Adams, Elliot, Tompkins, Mozingo, Irving and Does 101-125 owed a duty of care to Eddy Soriano to properly evaluate, assess and classify Eddy Soriano as a detainee of the Murrieta Police Department.

94.     At all times relevant herein, the City and Defendants Meadows, Adams, Elliot, Tompkins, Mozingo, Irving and Does 101-125 knew, or should

31

have known, that Eddy Soriano was suffering from a mental disorder such that it would be inappropriate to classify him as a criminal detainee, and instead, Eddy Soriano should have been classified as a Welfare and Institutions Code 5150 detainee such that appropriate mental health care and treatment would be provided to him.

95.     Under California Government Code Sections 845.6; 820(a) and Section 815.2, Defendant City and Defendants Meadows, Adams, Elliot, Tompkins, Mozingo, Irving and Does 101-125 had a duty to take reasonable action to summon medical care when Defendants Meadows, Adams, Elliot, Tompkins, Mozingo and Irving knew, or had reason to know that Plaintiff Eddy Soriano required immediate medical care in the form of mental health treatment.

96.     Under California Government Code Sections 856, 820(a) and Section 815.2, Defendant City and Defendants Meadows, Adams, Elliot, Tompkins, Mozingo, Irving and Does 101-125 had a duty to use due care in carrying out a determination to confine Plaintiff Eddy Soriano and the terms and conditions of Eddy Soriano's confinement.

97.     While acting in the course and scope of their employment with City, Defendants Meadows, Adams, Elliot, Tompkins, Mozingo, Irving and Does 101-125 failed to use due care in carrying out the determination to confine Plaintiff Eddy Soriano and in carrying out the terms and conditions of his confinement by

failing to adequately investigate, evaluate or analyze Plaintiff Eddy Soriano's

mental health condition.

98.     City, and Defendants Meadows, Adams, Elliot, Tompkins, Mozingo,

Irving and Does 101-125 breached their duties of care under the foregoing statutes

by failing to properly evaluate and assess his mental health upon detaining him;

failing to classify him appropriately based on his mental health disorder; and

failing to take reasonable action to summon appropriate mental health care for

Plaintiff Eddy Soriano which caused him to be detained as a prisoner.  City, and

Defendants Meadows, Adams, Elliot, Tompkins, Mozingo, Irving and Does 101-

125 failed to communicate to subsequent entities to whom the care and custody of

Eddy Soriano had been transferred that Eddy Soriano suffered from a mental

health disorder and failed to warn subsequent entities to whom the care and

custody of Eddy Soriano had been transferred of behavior Eddy Soriano

demonstrated while in the care and custody of the Murrieta Police Department

consistent with a mental health disorder and Eddy Soriano's need for appropriate

mental health care and treatment.

99.     As a direct and proximate result of the conduct of Defendant City,

and Defendants Meadows, Adams, Elliot, Tompkins, Mozingo, Irving and Does

101-125, who were acting in the course and scope of their employment with City,

Eddy Soriano was transferred into the custody of the County of Riverside,

33

Riverside County Sheriff's Department and RPDC with an improper classification such that Eddy Soriano was then improperly housed with cellmate Jackson and Soriano was not given appropriate mental health care and treatment. But for the conduct of Defendant City, by and through officers of the Murrieta Police Department, Plaintiff Eddy Soriano would not have been placed in the same cell with Defendant Jackson.  On February 18, 2015, during the period of Eddy Soriano's confinement with Jackson at RPDC, Eddy Soriano was brutally beaten by his cellmate Jackson for a period of approximately 37 minutes such that Eddy Soriano sustained severe injuries and is now in a permanent vegetative state for the remainder of his life.

100.   Based on Defendant City and Defendant Meadows, Adams, Elliot, Tompkins, Mozingo, Irving and Does 101-125's aforementioned conduct, Plaintiff Eddy Soriano suffered the damages and injuries as set forth herein.

101.   Plaintiff Eddy Soriano and Plaintiff Marites de Guzman allege on information and belief that at the time of the incident, in doing the acts and omissions alleged herein, Defendants Meadows, Adams, Elliot, Tompkins, Mozingo, Irving and Does 101-125 were agents and/or employees of Defendant City and were acting within the course and scope of their employment with Defendant City.  Pursuant to Government Code section 815.2(a), and section 845.5, Defendant City is therefore vicariously liable for the acts and omissions of

34

its employees as alleged herein.

102.   At all times relevant herein, the acts and omissions of Defendant City and Defendants Meadows, Adams, Elliot, Tompkins, Mozingo, Irving and Does 101-125 were a substantial factor in causing Plaintiff Eddy Soriano's harm and injuries alleged herein.

103.    At all relevant times herein, Plaintiff Marites de Guzman and Plaintiff Eddy Soriano were wife and husband.

104.   As a proximate result of City and Defendants Meadows, Adams, Elliot, Tompkins, Mozingo, Irving and Does 101-125's wrongful conduct, Plaintiff Marites de Guzman suffered a loss of consortium due to Eddy Soriano's injuries.

## NINTH CAUSE OF ACTION

### (Violation of 42 U.S.C. 1983 Brought by Plaintiff Marites de Guzman Against County of Riverside, and Does 51-100)

105.   Plaintiff Marites de Guzman realleges and incorporates by reference paragraphs 1 - 104 of this complaint.

106.   Plaintiff Marites de Guzman had a liberty interest in her companionship and familial/marital relationship with her husband, Plaintiff Eddy Soriano, such that no state actor's interference with her liberty interest may occur without due process of law.

35

107.   Defendants County, and Does 51-100 deprived Plaintiff Marites de Guzman of her liberty interest in the companionship of her husband by the following acts:

a.   causing and permitting the RPDC to be overcrowded which contributed to causing inmate on inmate violence.

b.   requiring violent and/or mentally unstable inmates to be housed in the same cell as other inmates.

c.   failing to assign sufficient Sheriff's deputies to the RPDC in order to provide adequate monitoring and supervision of the inmates.

d.   failing to properly train the Sheriff's deputies assigned to the RPDC such that the deputies did not have sufficient knowledge or skills to adequately monitor and supervise the inmates.

e.   failing to provide jail buildings with functioning alarm components in the audio/intercom systems so that Sheriff's deputies could respond promptly and communicate with inmates that needed assistance.

f.   failing to properly use the video surveillance systems that were available to them for supervising the cells while on duty at RPDC.

g.   ignoring video surveillance systems that were available to them for supervising cells while on duty at RPDC.

36

h.  failing to follow standard operating procedures regarding performing physical visual inspections of the cells at RPDC; and

i.  failing to perform correction officer job duties in monitoring the inmates, supervising the inmates, and inspecting and maintaining the inmate audio and visual monitoring systems.

108.   In doing the acts complained of, County and Does 51-100, acted under color of State law with deliberate indifference to deprive Plaintiff Marites de Guzman of certain constitutionally protected rights, including, but not limited to, the right not to be deprived of liberty without due process of law, as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution.

109.   In acting and failing to act as hereinabove alleged, Defendant County and Does 51-100, and each of them, violated Plaintiff Marites de Guzman's liberty interest in the companionship of her husband such that Plaintiff Eddy Soriano was severely injured by the brutal attack of his cellmate Jackson to the point that Plaintiff Eddy Soriano is now in a permanent vegetative state and is not expected to ever recover, nor will Plaintiff Marites de Guzman ever enjoy the companionship of her husband again.

110.   Defendant County and Does 51-100's acts and omissions as set forth above were a substantial factor in causing Plaintiff Marites de Guzman's harm.

111.   As a proximate result of Defendant County and Does 51-100's

37

wrongful conduct, Plaintiff Marites de Guzman suffered injuries and damages in an amount to be proven at trial.

112.   In acting as hereinabove alleged, the conduct of Defendants 51-100 was performed knowingly, intentionally, maliciously, amounting to despicable conduct by reason of which Plaintiff Marites de Guzman is entitled to an award of punitive damages in a just and reasonable sum.

### TENTH CAUSE OF ACTION

### (Claim for Battery Brought by Plaintiff Eddy Soriano

### Against Defendant Jackson)

113.   Plaintiff Eddy Soriano realleges and incorporates by reference paragraphs 1 - 112 of this complaint.

114.   On February 18, 2015, Defendant Jackson touched Plaintiff Eddy Soriano with the intent to harm or offend him by beating him severely in their shared cell for a period of approximately 37 minutes.  Defendant Jackson inflicted skull fractures, facial fractures and severe brain injuries on Plaintiff Eddy Soriano such that Plaintiff Eddy Soriano is now in a permanent vegetative state, requiring round-the-clock medical care and attention for the remainder of his life.

115.   At no time did Plaintiff Eddy Soriano consent to the touching by Defendant Jackson.

116.   As a direct and proximate result of Defendant Jackson's actions in

beating Plaintiff Eddy Soriano, Plaintiff was harmed and suffered damages and severe injuries as alleged herein.

117.   A reasonable person in Plaintiff Eddy Soriano's situation would have been offended by Defendant Jackson's conduct in severely beating Plaintiff Eddy Soriano to the point where he is now in a permanent vegetative state for the remainder of his life.

## **PRAYER**

1.   WHEREFORE, Plaintiffs pray for judgment against defendants, and each of them, jointly and severally, as follows:

    a.  For economic damages according to proof;

    b.  For non-economic damages according to proof;

    c.  Punitive damages against each of the individual defendants (Sniff, Di Yorio; Ibarra; Gutierrez; Busby, Jackson, Meadows, Adams, Elliot, Tompkins, Mozingo and Irving and Does 26-125) according to proof;

    d.  Reasonable attorney fees and costs of suit pursuant to 42 U.S.C. 1988 where appropriate;

    e.  Prejudgment interest;

    f.  Costs of suit incurred herein and further relief as the Court deems just and proper.

39

1

## **DEMAND FOR JURY TRIAL**

2

3

Plaintiffs respectfully demand that the present matter be set for a jury trial.

4

Dated:  April 15, 2016          \s_____

5
Robert Trujillo, Esq.

6
Attorney for Plaintiffs, Eddy Soriano by and through his Conservator, Sherly Tolentino and Marites De Guzman

7

8

Dated:  April 15, 2016          \s_____

9
Melody Trujillo, Esq.

10
Attorney for Plaintiffs, Eddy Soriano by and through his Conservator, Sherly Tolentino and Marites De Guzman

11

12

Dated:  April 15, 2016          \s_____

13
Suzanne Skolnick, Esq.

14
Attorney for Plaintiffs, Eddy Soriano by and through his Conservator, Sherly Tolentino and Marites De Guzman

15

16

Dated:  April 15, 2016          \s_____

17
Lewis Khashan, Esq.

18
Attorney for Plaintiffs, Eddy Soriano by and through his Conservator, Sherly Tolentino and Marites De Guzman

19

20

21

22

23

24

25

26

27

28

40