TRUJILLO & TRUJILLO, APLC
Robert Trujillo, Esq. (CA SBN 148975)
Melody Trujillo, Esq. (CA SBN 165218)
41593 Winchester Road, Suite 201
Temecula, CA 92590
Tel:  951-296-9529
Email:  trulaw@trujillo-law.us

Suzanne Skolnick, Esq. (CA SBN 211076)
2888 Loker Avenue East, Suite 110-F
Carlsbad, CA  92010
Tel.     (760) 405-4397
Email:  suzanne@skolnicklawgroup.com

Lewis Khashan, Esq. (CA SBN 275906)
41593 Winchester Road, Suite 201
Temecula, CA 92590
Tel:  951-775-7279
Email:  lewis@khashanlaw.com

Attorneys for Plaintiffs Eddy Soriano,
By and through his conservator, Sherly
Tolentino, et al.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Eddy Soriano, by and through his Conservator, Sherly Tolentino; Marites de Guzman; , | Case No. 5:16-cv-155 BRO (SP) |
| Plaintiffs, | **PLAINTIFFS' THIRD AMENDED COMPLAINT FOR DAMAGES AND VIOLATIONS OF CIVIL RIGHTS** |
| v. | |
| COUNTY OF RIVERSIDE; CITY OF MURRIETA; STANLEY SNIFF, Sheriff of Riverside County; WILLIAM DI YORIO, Undersheriff of Riverside County; JULIO IBARRA, | **JURY TRIAL DEMANDED** |

1

Senior Safety Coordinator for )
Riverside County; JERRY )
GUTIERREZ, Corrections Assistant )
Sheriff; VIRGINIA BUSBY, Captain )
of Robert Presley Detention Center; )
Correctional Deputy NORMAN )
NANTES; Correctional Deputy )
JASON CHIVAS; Correctional Deputy )
JEFFREY PINION; Correctional )
Deputy CHRISTOPHER ALVAREZ )
Murrieta Police Department OFFICER )
JEREMY MEADOWS; OFFICER H. )
ADAMS; OFFICER ELLIOT; )
OFFICER TOMPKINS; OFFICER )
MATTHEW MOZINGO; OFFICER )
IRVING; TYLER SCOTT JACKSON; )
and DOES 1-125, )
　　　　　　Defendants.

## PRELIMINARY STATEMENT

This action against the County of Riverside, City of Murrieta, and individual agents and/or employees of the County of Riverside, arises due to the Defendants' improper placement of Plaintiff Eddy Soriano, a known mental health patient in need of mental health treatment and care, into custody within the jail system, and Defendants' subsequent failure to protect Plaintiff Eddy Soriano from severe physical abuse inflicted upon him at the hand of his jail cellmate.  As a result of Defendants' various actions and inactions, Plaintiff Eddy Soriano is now in a permanent vegetative state, and will remain so for the duration of his lifetime.

## JURISDICTION

1.　　This action arises under Title 42 of the United States Code, Section

2

1983.  Jurisdiction is confered upon this Court by Title 28 of the United States Code, Section 1331 and 1343.  In addition, this Court has pendent and supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over the state law claims alleged in this complaint.

### VENUE

2.     The unlawful acts and practices alleged herein occurred in the County of Riverside, State of California, within this judicial district.  Therefore, venue lies in the United States District Court for the Central District of California.

### CLAIMS REQUIREMENT

3.     Plaintiffs have complied with the requirements of California Government Code section 900, et seq., where an action for state court claims is filed against a public entity and its employees.

### CONSERVATORSHIP ESTABLISHED

4.     On September 1, 2015, Letters of Conservatorship were issued by the Superior Court of California for the County of Los Angeles, naming Sherly Tolentino as conservator over the person and estate of Eddy Soriano.

### PARTIES

5.     Plaintiff, Eddy Soriano, an individual, by and through his conservator, Sherly Tolentino (hereafter "Soriano"), is, and at all times mentioned herein was, a resident of the State of California.

3

6.     Plaintiff Marites de Guzman (hereafter "de Guzman") is the wife of Plaintiff Eddy Soriano and is, and at all times mentioned herein was, a resident of the State of California.

7.     Defendant County of Riverside (hereinafter "County") is a public entity which is responsible for and administers the Robert Presley Detention Center (hereinafter "RPDC") through its agency, the Riverside County Sheriff's Department (hereinafter "RCSD").  County promulgates policies and practices for the housing, custody, care, safekeeping and protection of inmates in the RPDC. The County and Does 1 -25 constructed, owned, operated, repaired, maintained and controlled the buildings in which the RPDC is located.

8.     Defendant City of Murrieta is a public entity city located in California and is the employer of officers of the Murrieta Police Department.

9.     Defendant Stanley Sniff (hereafter "Sniff") is, and at all times herein mentioned was, the Sheriff of Riverside County.  As Sheriff of Riverside County, Sniff has ultimate supervision and management responsibility over the five jails, or correctional facilities in Riverside County, all managed by the Sheriff's Department Corrections Division.  Sniff was elected as Sheriff in 2010 and took office in January, 2011.  Sheriff Sniff ran, operated, oversaw, administered, supervised and was otherwise responsible for the conduct of the RCSD at the RPDC.  Defendant Stanley Sniff is sued both individually and in his official

4

capacity.

10.     Defendant William Di Yorio (hereafter "Di Yorio") is, and at all times herein mentioned was, the Undersheriff of Riverside County.  Di Yorio ran, operated, oversaw, administered, supervised and was otherwise responsible for the conduct of the RCSD at the RPDC.

11.     Defendant Julio Ibarra (hereafter "Ibarra") is, and at all times herein mentioned was, the Senior Safety Coordinator for the County of Riverside.  Ibarra ran, operated, administered, supervised and was otherwise responsible for safety policies and procedures for the Riverside County jail system, including the RPDC.

12.     Defendant Jerry Gutierrez (hereafter "Gutierrez") is, and at all times herein mentioned was, the Corrections Assistant Sheriff of Riverside County.  Gutierrez ran, operated, oversaw, administered, supervised and was otherwise responsible for the conduct of the RCSD at the RPDC.

13.     Defendant Virginia Busby (hereafter "Busby") is, and at all times herein mentioned was, Captain at the RPDC and ran, operated, oversaw, administered, supervised and was otherwise responsible for the conduct of the RCSD at the RPDC.

14.     Defendant Tyler Scott Jackson (hereafter "Jackson") is, and at all times herein mentioned, was a resident of the State of California and an inmate at RPDC.

5

15.     Does 26-50 are County of Riverside officials who ran, oversaw, administered, supervised and were otherwise responsible for the conduct of the RPDC.

16.     Does 51 -100 are and were Sheriff's deputies or other employees or agents of the County of Riverside employed at the RPDC.

17.     Defendant Jeremy Meadows (hereafter "Meadows") is, and at all times stated herein was, a police officer for the City of Murrieta, (Badge Number 833), and a resident of California.

18.     Defendant Officer H. Adams (Badge Number 642) (hereafter "Adams") is, and at all times stated herein was, a police officer for the City of Murrieta, and a resident of California.

19.     Defendant Corporal Elliot (Badge Number 664) (hereafter "Elliot") is, and at all times stated herein was, a police officer for the City of Murrieta, and a resident of California.

20.     Defendant Officer Tompkins (Badge Number 659) (hereafter "Tompkins") is, and at all times stated herein was, a police officer for the City of Murrieta, and a resident of California.

21.     Defendant Matthew Mozingo (hereafter "Mozingo") is, and at all times stated herein was, a police officer for the City of Murrieta (Badge Number 441) and a resident of California.

6

22.     Defendant Officer Irving (Badge Number 894) (hereafter "Irving") is, and at all times stated herein was, a police officer for the City of Murrieta, and a resident of California.

23.     Defendant Correctional Deputy Norman Nantes (hereafter "Nantes") is, and at all times stated herein was, a correctional deputy for the County of Riverside Sheriff's Department and was working at the Robert Presley Detention Center on the date of the incident, and was assigned to supervise the inmates in 5B, including Plaintiff Soriano and Defendant Jackson at the time of the incident.

24.     Defendant Correctional Deputy Jeffrey Pinion (hereafter "Pinion") is, and at all times stated herein was, a correctional deputy for the County of Riverside Sheriff's Department and was working at the Robert Presley Detention Center on the date of the incident, and was assigned to supervise the inmates in 5B, including Plaintiff Soriano and Defendant Jackson at the time of the incident. Defendant Pinion was also assigned to the control Pod for 5B at the time of the incident.

25.     Defendant Correctional Deputy Jason Chivas (hereafter "Chivas") is, and at all times stated herein was, a correctional deputy for the County of Riverside Sheriff's Department and was working at the Robert Presley Detention Center on the date of the incident, and was assigned to supervise the inmates in 5B, including Plaintiff Soriano and Defendant Jackson at the time of the incident.

7

25.1.  Defendant Correctional Deputy Christopher Alvarez (hereafter "Alvarez") is, and at all times stated herein was, a correctional deputy for the County of Riverside Sheriff's Department and was working at the Robert Presley Detention Center on the date of the incident, and was assigned to classification of inmates at the jail and was responsible for housing Plaintiff Soriano in the same cell as Defendant Jackson.

26.     Plaintiff is ignorant of the true names and capacities of Defendant Does 1 – 125, inclusive, and therefore sue these defendants by such fictitious names.  Plaintiffs are informed and believe, and based thereon allege, that each defendant so named is responsible in some manner for the injuries and damages suffered by Plaintiffs.  Plaintiffs will amend this complaint to state the true names and capacities of defendants Does 1 – 125, inclusive, when they have been ascertained.

27.     Does 101-125 are and were at the time of the facts giving rise to this complaint, employees or agents of the City of Murrieta.

28.     At all times mentioned herein, each named Doe Defendant 1 through 100, inclusive, was the agent or employee of Defendant County of Riverside and, in doing the things alleged, was acting within the course and scope of such agency or employment and with the actual or implied permission, consent, authorization and approval of the County.

8

29.     At all times mentioned herein, each named Doe Defendant 101 through 125, inclusive, was the agent or employee of Defendant City of Murrieta and, in doing the things alleged, was acting within the course and scope of such agency or employment and with the actual or implied permission, consent, authorization and approval of the City.

30.     Plaintiff Eddy Soriano is the father of five adult children named: Gerlie S. Hall, Sheryl Soriano, Emily Soriano, Rhoderick Soriano, and Donald Soriano.  In the event that Plaintiff Eddy Soriano succumbs to his injuries and passes away while this action is pending, Plaintiffs will amend the complaint to allege a cause of action for wrongful death brought on behalf of each of Plaintiff Eddy Soriano's children and Plaintiff Marites de Guzman.

## STATEMENT OF FACTS

31.     Plaintiff Eddy Soriano was a 64 year old man suffering from mental health conditions, who had an extensive prior history of undiagnosed night terrors. Prior to the incident, Mr. Soriano lived in Long Beach, California.  On numerous prior occasions, during these night terror episodes, Mr. Soriano would roam the Long Beach neighborhoods in a confused and disoriented state, and would be picked up by Long Beach police department officers.  According to standard operating procedures of the Long Beach police department, the officers would impose a Welfare and Institutions Code section 5150 involuntary psychiatric hold

9

on Mr. Soriano, so that Mr. Soriano could receive appropriate mental health attention and care, as opposed to arresting Mr. Soriano and placing him into custody with the general jail population.

32.     On February 8, 2015, Plaintiff Eddy Soriano suffered a night terror episode while visiting friends in Murrieta, California.  During the episode, Mr. Soriano left his friend's home and began wandering the streets of Murrieta in a confused state.  Witnesses stated that he was seeing things that weren't there, appeared confused, and believed that he was being chased by individuals who were trying to hurt him.  On the night in question, Mr. Soriano ran frantically through the neighborhood on Lido Drive in Murrieta, before ultimately climbing into, and attempting to hide himself in, an unlocked vehicle.  Officers from the City of Murrieta Police Department received a 911 call that a delusional man was running around who suffered from dementia.  Officers from the City of Murrieta Police Department responded to the call and, despite knowing: (a) Plaintiff Eddy Soriano's prior mental health history; (b) that Plaintiff Eddy Soriano had no criminal record; (c) that Plaintiff Eddy Soriano had a prior history of numerous 5150 encounters through the Long Beach Police Department; and (d) having information from witnesses that Mr. Soriano suffered from dementia; Murrieta police officers did not impose an involuntary psychiatric hold on Mr. Soriano and instead, placed him under arrest and booked him into the Southwest Detention

Center in Murrieta, California.

33.     Mr. Soriano was thereafter transferred from the Murrieta Police Department to Southwest Detention Center and ultimately, into the custody of County and RCSD at the RPDC.  While incarcerated at RPDC, Mr. Soriano was transferred from the general inmate population into a mental health cell.  The mental health cell is one that is reserved for inmates exhibiting a mental health condition.  In the mental health cell in which Mr. Soriano was placed, there is an intercom button that an inmate is supposed to be able to use to communicate with the deputies.  The alarm portion of the audio component/intercom button in Mr. Soriano's cell had been disconnected since 2006 by order of Defendant Gutierrez. All of the deputies at RPDC that had ever covered surveillance for the mental health cell in which Mr. Soriano was placed, were aware – since the time it was disconnected in 2006 - that the alarm portion of the audio component/intercom system did not function, yet repeatedly signed off on safety check sheets that the system was in good working order and condition.  At no time did any deputy inform Mr. Soriano that the alarm portion of the audio component/intercom button in his cell did not function.

34.     At any given moment, there are supposed to be three officers responsible for surveilling the cells.  These officers are known as "Pod 1", "Pod 2" and "Pod runner" respectively.  The Pod 1 officer must remain at his post

11

constantly and watches the video screens linked to the cells at all times.  The cells, including the one in which Mr. Soriano was housed, were equipped with video surveillance and should have been equipped with a functioning alarm portion of the audio/intercom system.  Each hour, a deputy of the RCSD is also required to perform a physical visual inspection of each cell, including the mental health cell in which Mr. Soriano was housed.

35.     Prior to, and on the date of this incident, Defendant Jackson was a violent, mentally unstable inmate at RPDC in the custody of County and RCSD. Defendant Jackson, aged 23, was some 41 years younger than Plaintiff Eddy Soriano (aged 64), and was significantly larger than Eddy Soriano in stature and build.  At all times herein mentioned, County, RCSD and its employees knew or should have known that Jackson was a danger to other persons in custody at RPDC, and a danger to Mr. Soriano in particular.  Due to Jackson's prior violence, there were orders that Jackson be housed alone prior to the time that he was housed in the same cell with Eddy Soriano.  RPDC officials disregarded the substantial risk to Plaintiff Eddy Soriano's health and safety when they housed Eddy Soriano, who had never previously been incarcerated, with Defendant Jackson, a convicted felon.

35.1. Class notes detailing Jackson's prior violent tendencies and threats were maintained by the classification office at the jail and were accessible to any

12

County classification employee prior to housing Plaintiff Soriano with Jackson. The class notes on Defendant Jackson showed that he had violent tendencies towards his cellmates since entering the Riverside County jail system in September, 2014.  Prior incidents included:  September 20, 2014 - Jackson was involved in a Penal Code 242 (battery) with another inmate; January 15, 2015 - Jackson was taken to a safety cell "for being a danger to others"; February 3, 2015 - Jackson verbally threatened a deputy; February 8, 2015 - Jackson informed deputies that he would attack his cellmate in cell 1687 "as soon as the door opened"; February 8, 2015 - Jackson stated he wanted to fight his cellmate in cell 1695; February 10, 2015 - Jackson threatened his cellmate in cell 1691 saying he "just wants to fight" and inmate Richard Oliphant told County employee Corporal Velasquez that "somebody needs to get Jackson out of his cell before a fight happens";   February 17, 2015 - (the day before Plaintiff Soriano was beaten) Jackson was removed from his cell "to avoid a [Penal Code] 242 [battery] with his cellie".  Class notes further indicate on February 9, 2015 - just 9 days before the incident with Plaintiff Soriano - that mental health had been "seeing Jackson all week…and he continues to tell" that he wants to "fight".  An entry in the class notes for February 9, 2015 also states "Jackson has been rehoused twice in the last two days and has had an issue with all cell mates."

36.     Prior to, and on the date of this incident, Defendants knew or should

13

have known that Mr. Soriano had a mental health condition and suffered from night terrors that would cause Mr. Soriano to act out at times and behave in an irrational manner.

37.     On February 18, 2015, while incarcerated at RPDC in Riverside, California, Plaintiff Eddy Soriano was placed in the mental health cell that lacked a functioning alarm component of the audio/intercom system, along with Defendant Jackson.  On February 18, 2015, while both men were in their shared cell, Defendant Jackson began a course of physical assault, threats and intimidation toward Plaintiff Eddy Soriano lasting approximately two hours from start to finish and resulting in two separate distinct attacks causing severe injuries to Plaintiff Eddy Soriano.  The first attack occurred approximately one hour and 25 minutes before the second attack.  The first attack involved Defendant Jackson punching Soriano in the face two times causing his face to bleed profusely. Approximately one hour and 25 minutes later, the second (main) attack occurred wherein Defendant Jackson severely beat Plaintiff Eddy Soriano for a period of approximately 21 minutes.  Defendant Jackson inflicted severe injuries to Plaintiff Eddy Soriano, including, but not limited to, skull and facial fractures and severe brain damage.  Following the first attack, Defendants Nantes and Chivas performed pill call and had an opportunity to observe that plaintiff was seriously injured and required immediate medical attention, yet neither Defendant Nantes or

14

Chivas took any action to provide Plaintiff Eddy Soriano with the medical attention he required, nor did they intervene to prevent any further violence against Plaintiff Eddy Soriano despite having ample opportunity to do so. Approximately one hour and 25 minutes after the first attack, the second (main) 21-minute-long attack of Plaintiff Eddy Soriano by Defendant Jackson began. During the second attack, Plaintiff Eddy Soriano desperately attempted to summon help from the deputies by pressing the intercom button at least 3 times, however, no deputies responded to his call.  During the second attack, the "Pod 1" officer on duty should have received video images of Plaintiff Eddy Soriano being attacked in his cell, and would have received video images of Plaintiff Eddy Soriano being attacked in his cell, had the Pod 1 officer been performing his assigned duties.  Additionally, during the second attack, Plaintiff Eddy Soriano pressed a button in his cell which caused a blue light to flash in the control Pod. The blue flashing light continues to flash until a deputy turns it off.  During the second 21-minute long attack, plaintiff is informed and believes that the blue light was flashing continuously in the control Pod.  Yet, for 21 minutes, no officer responded to Mr. Soriano's aid.  During the 21-minute attack, RCSD deputies were required to conduct regularly scheduled, physical, walk-through, visual inspections of Mr.  Soriano's cell, however, either no physical, visual inspection was ever performed as scheduled, or the officer performing the inspection ignored

15

Mr. Soriano's pleas for help.  As result of the severe beating Mr. Soriano received while in the care and custody of the County of Riverside, Mr. Soriano is now in permanent vegetative state and requires round-the-clock medical care and attention and will require such care for the remainder of his life.

## DAMAGES

38.     As a proximate result of Defendants' conduct, Plaintiff Eddy Soriano suffered permanent traumatic brain injury resulting in pain and suffering, past and future medical expenses, past and future wage loss, and past and future lost earning capacity.

39.     Plaintiffs have found it necessary to engage the services of counsel to vindicate their rights under the law.  Plaintiffs are therefore entitled to an award of all attorneys' fees and litigation costs incurred in pursuing this action for violation of civil rights.

## FIRST CAUSE OF ACTION

**(Violation of 42 U.S.C. § 1983  - brought by Soriano Against Defendants County; Stanley Sniff; William Di Yorio; Julio Ibarra; Jerry Gutierrez; Virginia Busby; and Does 26 – 50)**

40.     Plaintiff Eddy Soriano realleges and incorporates by reference paragraphs 1-39 of this complaint.

41.     Defendants' above alleged actions and failures to act resulted from

PLAINTIFFS' THIRD AMENDED COMPLAINT FOR DAMAGES, VIOLATIONS OF CIVIL RIGHTS

CASE NO.: 5:16-CV-155 BRO (SP)

policies, customs and practices of Defendants County; Sniff, Di Yorio; Ibarra;

Gutierrez; Busby and Does 26-50, including, but not limited to, the following:

    a.  County; Sniff; Di Yorio; Ibarra; Gutierrez; Busby and Does 26-50, caused and permitted the RPDC to be overcrowded.  The overcrowding contributed to causing inmate on inmate violence.

    b.  County; Sniff; Di Yorio; Ibarra; Gutierrez; Busby and Does 26-50, required violent and/or mentally unstable inmates to be housed in the same cell as other inmates.

    c.  County; Sniff; Di Yorio; Ibarra; Gutierrez; Busby and Does 26-50, failed to assign sufficient Sheriff's deputies to the RPDC in order to provide adequate monitoring and supervision of the inmates.

    d.  County; Sniff; Di Yorio; Ibarra; Gutierrez; Busby and Does 26-50,   failed to properly train the Sheriff's deputies assigned to the RPDC so that the deputies did not have sufficient knowledge or skills to adequately monitor and supervise the inmates.

    e.  County; Sniff; Di Yorio; Ibarra; Gutierrez; Busby and Does 26-50, failed to provide jail buildings with functioning alarm components in the audio/intercom systems so that Sheriff's deputies could respond promptly and communicate with inmates

17

that needed assistance.

f.  County; Sniff; Di Yorio; Ibarra; Gutierrez; Busby and Does 26-
    50, failed to properly use the video surveillance systems that were
    available to them for supervising the cells while on duty at RPDC;

g.  County; Sniff; Di Yorio; Ibarra; Gutierrez; Busby and Does 26-
    50, ignored video surveillance systems that were available to them
    for supervising cells while on duty at RPDC.

h.  County; Sniff; Di Yorio; Ibarra; Gutierrez; Busby and Does 26-
    50, failed to follow standard operating procedures regarding
    performing physical visual inspections of the cells at RPDC.

i.  County; Sniff; Di Yorio; Ibarra; Gutierrez; Busby and Does 26-50
    failed to perform their job duties in monitoring the inmates,
    supervising the inmates, and inspecting and maintaining the
    inmate audio and visual monitoring systems.

42.    In 2013, prior to Plaintiff's brutal attack, at least three occurrences of
inmate-on-inmate violence resulting in death or severe injuries at the County of
Riverside's Southwest Detention Center facility occurred.  The three occurrences
included (a) the severe beating of Vernon Vasquez on January 10, 2013; (b) the
death of Julio Negrete on May 9, 2013 and (c) the severe beating of William Ray
Espinoza on November 14, 2013.  All three occurrences stemmed from County's

policy, practice and custom of overcrowding inmates, improperly classifying inmates, housing violent and mentally unstable inmates together in cells, failing to follow standard operating procedures regarding performing visual inspections of inmates and inadequately monitoring and maintaining audio and visual monitoring systems.

43.     At the time that Plaintiff Eddy Soriano was attacked, County of Riverside jail facilities ranked second in California for in-custody deaths according to Department of Justice statistics and since Plaintiff Eddy Soriano's attack, in-custody deaths in the County of Riverside have continued to rise.

44.     Since Plaintiff's brutal attack, inmate Robert Anthony Hearn died from an attack by his cellmate on March 17, 2015 at County's Larry D. Smith Correctional Facility.

45.     Based on the frequency, characteristics and locations of the foregoing alleged occurrences of severe inmate-on-inmate violence throughout County's various jail facilities, Plaintiff alleges that County's actions and inactions related to overcrowding inmates, improperly classifying inmates, housing violent and mentally unstable inmates together in cells, failing to follow standard operating procedures regarding performing visual inspections of inmates and inadequately monitoring and maintaining audio and visual monitoring systems, are widespread in usage and constitute policies, practices and customs of County.

19

46.     In doing the acts complained of above, County; Sniff; Di Yorio; Ibarra; Gutierrez; Busby and Does 26-50, acted under color of State law to deprive Plaintiff Eddy Soriano of certain constitutionally protected rights, including, but not limited to, the right not to be deprived of life or liberty without due process of law, as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution.

47.     In acting and failing to act as hereinabove alleged, Defendants, and each of them, were deliberately indifferent to the substantial risk that Jackson would assault and severely injure Plaintiff Eddy Soriano.

48.     As a proximate result of Defendants' wrongful conduct, Plaintiff Eddy Soriano suffered the injuries and damages as set forth.

49.     In acting as hereinabove alleged, the conduct of Defendants Sniff; Di Yorio; Ibarra; Gutierrez; Busby and Does 26-50, was performed knowingly, intentionally, maliciously, amounting to despicable conduct by reason of which Plaintiffs are entitled to an award of punitive damages in a just and reasonable sum.

## SECOND CAUSE OF ACTION

### (42 U.S.C. §1983 – Brought by Soriano Against Defendants Nantes, Pinion, Chivas and Does 51-100)

50.     Plaintiff Eddy Soriano realleges and incorporates by reference

20

paragraphs 1 through 49 of this Complaint.

51.     On February 18, 2015, Defendants Nantes, Pinion and Chivas were assigned to monitor, supervise and protect the inmates in section 5B of the RPDC, including cell 5B51, which was the cell in which Plaintiff Eddy Soriano and Defendant Jackson were housed and where the incident occurred.

52.     The cells in 5B, including cell 5B51, contain video cameras which record movement in the cells constantly.  The video is simultaneously transmitted to the surveillance control room (also known as the "Pod") and is projected on television screens inside the Pod for the deputy in charge of the Pod to watch. Additionally, in the Pod there is a control board that corresponds to each cell in 5B.  Each cell in 5B also has an intercom system.  When the intercom system button is pressed inside a cell, the control board in the Pod lights up with a blue flashing light to alert any deputy in the control Pod that an inmate has called for help.  The blue light flashes constantly until a deputy turns it off.  Additionally, when an inmate presses the intercom button, an audible alarm is also supposed to sound in the control Pod, as a further warning to officers that an inmate requires attention.  On the date of the incident, the audible alarm component of the surveillance system for cell 5B51 was not functioning and had not been functioning since it was disconnected in 2006.  However, at the time of the incident, the blue flashing light for cell 5B51, along with the projected video

21

images of that cell were both functioning correctly.  Additionally, the 5B Pod has large windows that look directly into the 5B dayroom and the cells, including cell 5B51, are visible from the control Pod windows.  Cell 5B51 is less than 50 feet from the 5B control Pod.

53.     At the time of the incident, Defendant Pinion was assigned to monitor the control Pod while Defendants Chivas and Nantes were assigned to make the security checks, conduct pill calls, laundry exchange and other functions in 5B.

54.     Surveillance video of the attack on Plaintiff Eddy Soriano shows that the attack on Plaintiff by Defendant Jackson spanned a two hour period and was comprised of two distinct attacks.  The first attack occurred approximately one hour and 25 minutes before the second, main attack.  The second (main) attack lasted approximately 21 minutes and resulted in Plaintiff Eddy Soriano being so severely beaten as to now be in a permanent vegetative state.  In the first attack Defendant Jackson punched Plaintiff Eddy Soriano in the face two times, with the second punch, causing plaintiff serious facial injuries and bleeding.  The first attack was captured on cell 5B51's video and was clearly visible to Defendant Pinion on the monitors in the control room Pod at the time of the incident. Defendant Pinion knew or should have known that plaintiff had been injured by Defendant Jackson because the cell video surveillance system projected the

images into the control Pod that Defendant Pinion was monitoring at the time and also because plaintiff was clearly visible on camera caring for his injuries with a towel applied to his face for an extended period of time, during which Defendant Pinion either knew or should have known that plaintiff had serious medical needs that required immediate medical attention.

55.     The injuries Plaintiff Eddy Soriano sustained in the first attack were also clearly visible to any deputy checking on Plaintiff Eddy Soriano following the first attack because Plaintiff Eddy Soriano was bleeding profusely from his face, had bruising on his face, and was using a towel to soak up the blood from his face for an extended period of time after the first attack occurred.  Plaintiff Eddy Soriano's injuries from the first attack were also visible to anyone looking into cell 5B51 because plaintiff stood near the cell door, facing the window to the cell following the first attack.  The first attack and plaintiff's conduct after the attack are clearly visible on the cell surveillance video.

56.     Defendants Nantes and Chivas both saw Plaintiff Eddy Soriano during pill call which occurred between the first and second attacks.  Both Nantes and Chivas knew, or should have known, based on Plaintiff Eddy Soriano's visible facial injuries that Plaintiff Eddy Soriano was seriously injured and required immediate medical assistance at the time that pill call occurred.

57.     At no time during the one hour 25 minute period of time after the

23

initial two punches by Defendant Jackson, to the time when Defendant Jackson began his lengthy beating of Plaintiff, did Defendants Nantes, Pinion, Chivas or DOES 51-100 respond to Plaintiff Eddy Soriano's serious medical needs.

58.    Approximately one hour and 25 minutes after the first attack, the second (main) attack of plaintiff by Defendant Jackson occurred, wherein Defendant Jackson repeatedly punched plaintiff, kicked plaintiff and stomped on plaintiff's head for an excruciating 21 minutes.  The second attack is clearly visible on the cell surveillance video and continued for an unreasonable, extended period of time, during which plaintiff frantically pushed his cell intercom button for help, which triggered the blue light to flash in the control Pod.

59.    Defendants Nantes, Pinion, Chivas and DOES 51-100 were present in 5B throughout the entirety of the second attack and failed to respond to plaintiff's cries for help, the sound of stomping, yelling and banging on the cell door, the blue flashing light in the Pod control room, or the images of plaintiff being brutally beaten by Defendant Jackson that were being simultaneously projected to the Pod control room monitors over the course of 21 minutes.

60.    At all times relevant here, Defendants Nantes, Pinion, Chivas and DOES 51-100 were present and were charged with the constitutional duties of protection of plaintiff and were charged with the duty to not knowingly, with wanton disregard, cause his life, health and safety to be placed in danger by

24

intentionally and/or deliberately ignoring the known dangers to plaintiff that their actions or omissions placed him in.

61.     Defendants Nantes, Pinion, Chivas and DOES 51-100 placed plaintiff in danger by the following acts and/or omissions:

       a.  By placing plaintiff, a non-violent, elderly, pre-trial detainee suffering from mental health issues, in a cell with Defendant Jackson, who was known by Defendants County of Riverside, Nantes, Pinion, Chivas and DOES 51-100 to have recently displayed frequent aggressive and combative behavior toward his cellmates, without watching, monitoring or protecting plaintiff;

       b.  By placing plaintiff, a non-violent, elderly, pre-trial detainee suffering from mental health issues, in a cell with a violent criminal under circumstances which were conducive to the eruption of violence;

       c.  Causing plaintiff to remain in the cell with Defendant Jackson when defendants knew, or should have known, that the first attack (2 punches causing facial trauma and bruising) had already occurred, that further violence was imminent, and that plaintiff was utterly defenseless and substantially smaller in stature than Defendant Jackson to be able to defend himself;

25

d.  Not observing or protecting Plaintiff or otherwise standing by and allowing a brutal beating of plaintiff by Defendant Jackson to continue for an unreasonable length of time, resulting in unnecessary and grievous injury to Plaintiff;

e.  Not reacting to multiple warnings which continued for a lengthy period of time throughout the totality of the brutal attack, including a blue flashing light in the 5B control Pod, the simultaneously streaming video surveillance of the beating occurring in cell 5B51, the sound and thumping sensation of Defendant Jackson stomping on plaintiff's head no less than 30 times which could be heard throughout the 5B cellblock, numerous cries for help, screaming and banging on the cell door which was heard by multiple inmates throughout the 5B cellblock.

62.   Plaintiff is informed and believes that County of Riverside, Nantes, Pinion, Chivas and DOES 51-100 were aware of the threat that Defendant Jackson represented to plaintiff based on Jackson's prior violent incidents and aggressive behavior toward his cellmates, which was known to County of Riverside, Nantes, Pinion, Chivas and DOES 51-100  prior to placing plaintiff in the cell with Jackson.  County of Riverside, Nantes, Pinion, Chivas and DOES 51-100, intentionally, recklessly and with deliberate indifference, failed to take any

26

security measures to protect non-violent pre-trial detainees with mental health issues like plaintiff, from being victims of violent assault and battery while in their custody.

63.     Nantes, Pinion, Chivas and DOES 51-100 had ample and reasonably sufficient time and opportunity to intervene and prevent plaintiff's injuries, and were compelled to do so as Sheriff's deputies under the laws of the State of California and under the Constitution of the United States of America.  In deliberate indifference to the life and welfare of plaintiff, each said Defendant intentionally and with deliberate indifference to the civil rights of plaintiff, refrained from intervening in the acts leading to Plaintiff's injuries.

64.     In doing the acts complained of, Defendants Nantes, Pinion, Chivas and DOES 51-100  acted under the color of state law to deprive Plaintiff Eddy Soriano of certain constitutionally protected rights including, but not limited to, the right not to be deprived of life or liberty without due process of law, as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution.  The above acts and omissions, while carried out under color of law, have no justification or excuse in law, and instead constitute a gross abuse of governmental authority and power, shock the conscience, are fundamentally unfair, arbitrary and oppressive and unrelated to any activity which governmental officers may appropriately and legally undertake in the course of protecting

27

persons or property or ensuring civil order.

65.     In acting and failing to act as hereinabove alleged, Defendants Nantes, Pinion, Chivas and DOES 51-100, and each of them, were deliberately indifferent to the substantial risk that Jackson would assault and severely injure Plaintiff Eddy Soriano.

66.     As a proximate result of Defendants Nantes, Pinion, Chivas and Does 51 – 100's wrongful conduct, Plaintiff Eddy Soriano suffered injuries and damages as set forth.

67.     The conduct of Defendants Nantes, Pinion, Chivas and Does 51 – 100, and each of them, was intentional, malicious, willful, wanton and in reckless disregard of Plaintiff's constitutional rights and/or grossly negligent in that this conduct shocks the conscience and is fundamentally offensive to a civilized society, so as to justify the imposition of punitive damages against each of the foregoing individual defendants.

**THIRD CAUSE OF ACTION**

**(State Law Claim for Negligence – Brought by Soriano and de Guzman Against Defendants County, Nantes, Pinion, Chivas and Does 51-100)**

68.     Plaintiff Eddy Soriano and Plaintiff de Guzman reallege and incorporate by reference paragraphs 1 - 67 of this complaint.

28

69.     At all times mentioned herein, County, Nantes, Pinion, Chivas and Does 51-100 were subject to a duty of due care to monitor and supervise inmates of the RPDC. County, Nantes, Pinion, Chivas and Does 51-100 also had a duty to take all reasonably necessary steps to ensure Plaintiff Eddy Soriano's personal security while he was an inmate at RPDC.

70.     Under California Government Code Sections 845.6; 820(a) and Section 815.2, Defendant County, Nantes, Pinion, Chivas and Does 51-100 had a duty to take reasonable action to summon medical care when Defendant County, Nantes, Pinion, Chivas and Does 51-100 knew, or had reason to know that Plaintiff Eddy Soriano required immediate medical care.

71.     Under California Government Code Sections 856, 820(a) and Section 815.2, Defendant County, Nantes, Pinion, Chivas and Does 51-100 had a duty to use due care in carrying out a determination to confine Plaintiff Eddy Soriano and the terms and conditions of Eddy Soriano's confinement while at RPDC.

72.     On the day of the incident, County, Nantes, Pinion, Chivas and Does 51-100 negligently failed to exercise due care in monitoring and supervising Plaintiff Eddy Soriano and Defendant Tyler Scott Jackson by:  failing to properly observe and/or supervise Soriano and Jackson in their cell; by failing to respond to calls for help from Plaintiff Eddy Soriano; by failing to make physical inspections and visual inspections of the cell in which Soriano and Jackson were housed at

29

reasonable, timely intervals; by failing to follow operating procedures and policies requiring periodic visual inspections of the cells at RPDC; by failing to properly classify Soriano and Jackson such that both men were improperly placed in the same cell; by failing to attend to the cell in which Soriano and Jackson were housed; by not paying attention to the cell in which Soriano and Jackson were housed; and by failing to summon for, and administer, prompt and adequate medical attention to Soriano which further contributed to the severity of his injuries.

73.     Plaintiff Eddy Soriano and Plaintiff Marites de Guzman allege on information and belief that at the time of the incident, Defendants Nantes, Pinion, Chivas and Does 51-100 were agents and/or employees of Defendant County and in doing the acts and omissions alleged herein, were acting within the course and scope of their employment with Defendant County.  Pursuant to Government Code section 815.2(a), Defendant County is therefore vicariously liable for the acts and omissions of its employees as alleged herein.

74.     At all times relevant herein, the acts and omissions of Defendant County's employees, including Defendants Nantes, Pinion, Chivas and Does 51-100, were a substantial factor in causing Plaintiff Eddy Soriano's harm and such acts and omissions were carried out by Defendant County's employees in the course and scope of their employment with Defendant such that Defendant

30

County is vicariously liable for Plaintiff Eddy Soriano's injuries and damages.

75.     As a proximate result of Defendants' wrongful conduct, Plaintiff Eddy Soriano suffered injuries and damages as set forth herein.

76.     At all relevant times herein, Plaintiff Marites de Guzman and Plaintiff Eddy Soriano were wife and husband.

77.     As a proximate result of Defendants' wrongful conduct, Plaintiff Marites de Guzman suffered a loss of consortium due to Plaintiff Eddy Soriano's injuries, since he is now in a permanent vegetative state and cannot communicate with or provide companionship to Plaintiff Marites de Guzman.

## FOURTH CAUSE OF ACTION

**(42 USC 1983 Claim by Plaintiff Eddy Soriano Against Defendants Meadows, Adams, Elliot, Tompkins, Mozingo, Irving and DOES 101-125)**

78.     Plaintiff Eddy Soriano realleges and incorporates by reference paragraphs 1 - 77 of this complaint.

79.     On February 8, 2015 Defendant Meadows and Defendant Adams responded to a dispatch concerning Plaintiff Eddy Soriano for purposes of conducting a "welfare check". Defendants Elliot, Tompkins, Mozingo and Irving then also responded to the call. Defendant City's officers were further advised through dispatch *prior to* interacting with Plaintiff Eddy Soriano on February 8,

31

2015, that he had dementia and appeared confused.  At the time that Defendants Meadows, Adams, Elliot, Tompkins, Mozingo and Irving first approached Plaintiff Eddy Soriano, they knew or should have known that he had no prior criminal record and that he suffered from a mental condition.

80.     Defendants Meadows, Adams, Elliot, Tompkins, Mozingo and Irving and Does 101-125, knew that placing a mentally disabled individual who had no history of violence into custody with the general inmate population would create a substantial risk of serious harm to Plaintiff Soriano's health and safety.  Despite this knowledge, Defendants Meadows, Adams, Elliot, Tompkins, Mozingo, Irving and Does 101-125 acted with deliberate indifference to Plaintiff Soriano's health, safety, and personal security when they processed Plaintiff Soriano as a regular inmate instead of following Welfare and Institutions Code 5150 procedures.

81.     After arresting Plaintiff Eddy Soriano, Defendants Meadows, Adams, Elliot, Tompkins, Mozingo, Irving and Does 101-125, failed to adequately investigate, evaluate or analyze Plaintiff Eddy Soriano's mental health condition.

82.     In doing the acts complained of, Defendants Meadows, Adams, Elliot, Tompkins, Mozingo, Irving and Does 101-125 acted under the color of state law to deprive the Plaintiff Eddy Soriano of certain constitutionally protected rights including, but not limited to, the right not to be deprived of life or liberty without due process of law, as guaranteed by the Fifth and Fourteenth

Amendments to the United States Constitution and the right to be secure from unreasonable searches and seizures guaranteed by the Fourth Amendment to the United States Constitution.

83.    In acting and failing to act as hereinabove alleged, Defendants Meadows, Adams, Elliot, Tompkins, Mozingo, Irving and Does 101-125, and each of them, were deliberately indifferent to the substantial risk that Plaintiff Eddy Soriano would be injured when confined with other prisoners in the general prison population.

84.    As a proximate result of defendants' wrongful conduct, Plaintiff Eddy Soriano suffered injuries and damages as set forth when he was brutally attacked by Defendant Jackson.

## FIFTH CAUSE OF ACTION

**(State Law Claim for Negligence Brought by Plaintiffs Soriano and de Guzman against Defendant City of Murrieta and Defendants Meadows, Adams, Elliot, Tompkins, Mozingo, Irving and Does 101-125)**

85.    Plaintiff Eddy Soriano and Plaintiff de Guzman reallege and incorporate by reference paragraphs 1 - 84 of this complaint.

86.    At all times stated herein, Defendant City, and Defendants Meadows, Adams, Elliot, Tompkins, Mozingo, Irving and Does 101-125 owed a duty of care to Eddy Soriano to properly evaluate, assess and classify Eddy Soriano as a

detainee of the Murrieta Police Department.

87.     At all times relevant herein, the City and Defendants Meadows, Adams, Elliot, Tompkins, Mozingo, Irving and Does 101-125 knew, or should have known, that Eddy Soriano was suffering from a mental disorder such that it would be inappropriate to classify him as a criminal detainee, and instead, Eddy Soriano should have been classified as a Welfare and Institutions Code 5150 detainee such that appropriate mental health care and treatment would be provided to him.

88.     Under California Government Code Sections 845.6; 820(a) and Section 815.2, Defendant City and Defendants Meadows, Adams, Elliot, Tompkins, Mozingo, Irving and Does 101-125 had a duty to take reasonable action to summon medical care when Defendants Meadows, Adams, Elliot, Tompkins, Mozingo and Irving knew, or had reason to know that Plaintiff Eddy Soriano required immediate medical care in the form of mental health treatment.

89.     Under California Government Code Sections 856, 820(a) and Section 815.2, Defendant City and Defendants Meadows, Adams, Elliot, Tompkins, Mozingo, Irving and Does 101-125 had a duty to use due care in carrying out a determination to confine Plaintiff Eddy Soriano and the terms and conditions of Eddy Soriano's confinement.

90.     While acting in the course and scope of their employment with City,

Defendants Meadows, Adams, Elliot, Tompkins, Mozingo, Irving and Does 101-125 failed to use due care in carrying out the determination to confine Plaintiff Eddy Soriano and in carrying out the terms and conditions of his confinement by failing to adequately investigate, evaluate or analyze Plaintiff Eddy Soriano's mental health condition.

91.     City, and Defendants Meadows, Adams, Elliot, Tompkins, Mozingo, Irving and Does 101-125 breached their duties of care under the foregoing statutes by failing to properly evaluate and assess his mental health upon detaining him; failing to classify him appropriately based on his mental health disorder; and failing to take reasonable action to summon appropriate mental health care for Plaintiff Eddy Soriano which caused him to be detained as a prisoner.  City, and Defendants Meadows, Adams, Elliot, Tompkins, Mozingo, Irving and Does 101-125 failed to communicate to subsequent entities to whom the care and custody of Eddy Soriano had been transferred that Eddy Soriano suffered from a mental health disorder and failed to warn subsequent entities to whom the care and custody of Eddy Soriano had been transferred of behavior Eddy Soriano demonstrated while in the care and custody of the Murrieta Police Department consistent with a mental health disorder and Eddy Soriano's need for appropriate mental health care and treatment.

92.     As a direct and proximate result of the conduct of Defendant City,

35

and Defendants Meadows, Adams, Elliot, Tompkins, Mozingo, Irving and Does

101-125, who were acting in the course and scope of their employment with City,

Eddy Soriano was transferred into the custody of the County of Riverside,

Riverside County Sheriff's Department and RPDC with an improper classification

such that Eddy Soriano was then improperly housed with cellmate Jackson and

Soriano was not given appropriate mental health care and treatment. But for the

conduct of Defendant City, by and through officers of the Murrieta Police

Department, Plaintiff Eddy Soriano would not have been placed in the same cell

with Defendant Jackson.  On February 18, 2015, during the period of Eddy

Soriano's confinement with Jackson at RPDC, Eddy Soriano was brutally beaten

by his cellmate Jackson for a period of approximately 21 minutes such that Eddy

Soriano sustained severe injuries and is now in a permanent vegetative state for

the remainder of his life.

  93. Based on Defendant City and Defendant Meadows, Adams, Elliot,

Tompkins, Mozingo, Irving and Does 101-125's aforementioned conduct,

Plaintiff Eddy Soriano suffered the damages and injuries as set forth herein.

  94. Plaintiff Eddy Soriano and Plaintiff Marites de Guzman allege on

information and belief that at the time of the incident, in doing the acts and

omissions alleged herein, Defendants Meadows, Adams, Elliot, Tompkins,

Mozingo, Irving and Does 101-125 were agents and/or employees of Defendant

36

City and were acting within the course and scope of their employment with Defendant City. Pursuant to Government Code section 815.2(a), and section 845.5, Defendant City is therefore vicariously liable for the acts and omissions of its employees as alleged herein.

95. At all times relevant herein, the acts and omissions of Defendant City and Defendants Meadows, Adams, Elliot, Tompkins, Mozingo, Irving and Does 101-125 were a substantial factor in causing Plaintiff Eddy Soriano's harm and injuries alleged herein.

96. At all relevant times herein, Plaintiff Marites de Guzman and Plaintiff Eddy Soriano were wife and husband.

97. As a proximate result of City and Defendants Meadows, Adams, Elliot, Tompkins, Mozingo, Irving and Does 101-125's wrongful conduct, Plaintiff Marites de Guzman suffered a loss of consortium due to Eddy Soriano's injuries.

## SIXTH CAUSE OF ACTION

### (Claim for Battery Brought by Plaintiff Eddy Soriano Against Defendant Jackson)

98. Plaintiff Eddy Soriano realleges and incorporates by reference paragraphs 1 - 97 of this complaint.

99. On February 18, 2015, Defendant Jackson touched Plaintiff Eddy

37

Soriano with the intent to harm or offend him by beating him severely in their shared cell over the course of two hours, with two attacks occurring, the second lasting a period of approximately 21 minutes.  Defendant Jackson inflicted skull fractures, facial fractures and severe brain injuries on Plaintiff Eddy Soriano such that Plaintiff Eddy Soriano is now in a permanent vegetative state, requiring round-the-clock medical care and attention for the remainder of his life.

100.   At no time did Plaintiff Eddy Soriano consent to the touching by Defendant Jackson.

101.   As a direct and proximate result of Defendant Jackson's actions in beating Plaintiff Eddy Soriano, Plaintiff Eddy Soriano was harmed and suffered damages and severe injuries as alleged herein.

102.   A reasonable person in Plaintiff Eddy Soriano's situation would have been offended by Defendant Jackson's conduct in severely beating Plaintiff Eddy Soriano to the point where he is now in a permanent vegetative state for the remainder of his life.

## SEVENTH CAUSE OF ACTION

### (42 U.S.C. §1983 – Brought by Soriano Against Defendant Alvarez and Does 51-100)

103.   Plaintiff Eddy Soriano realleges and incorporates by reference paragraphs 1 through 102 of this Complaint.

38

104.   On February 18, 2015, Defendant Alvarez and Does 51-100, worked in the inmate classification department of the Robert Presley Detention Center. Defendant Alvarez and Does 51-100 duties were to assign inmates that required housing to cells within the jail; carry out the duties of a correctional officer to monitor, supervise and protect the life, health and safety of the inmates; and determine the appropriate housing for a pre-trial detainee in a manner that would safeguard the life and safety of the pre-trial detainee and minimize any threat to the physical safety of the pre-trial detainee from other inmates housed in the jail.

105.   5B of the Robert Presley Detention Center is the mental health portion of the jail and, in the period spanning February 2014 through March 2015, 5B was the housing unit in RPDC with the highest rate of inmate-on-inmate violence.

106.   On February 18, 2015, Defendant Alvarez and Does 51-100 housed Plaintiff Eddy Soriano, a non-violent, pre-trial detainee who had no prior criminal record and who was 64 years old, frail and small in stature, in the same cell as Defendant Jackson, who was known to be a violent, assaultive inmate who had been re-housed no less than seven (7) times due to his violent tendencies, and who was roughly 41 years younger than Plaintiff Eddy Soriano, mentally unstable and significantly larger in stature than Plaintiff.

107.   At the time that Defendant Alvarez and DOES 51-100 housed

Plaintiff Soriano with Defendant Jackson, he knew or should have known based on the class notes regarding Defendant Jackson's numerous prior violent tendencies that Defendant Jackson should be housed alone and that any inmate being placed with Defendant Jackson was at a substantial risk of being physically injured by Defendant Jackson.

108.   At all times relevant here, Defendant Alvarez and DOES 51-100 were present and were charged with the constitutional duties of protection of plaintiff and were charged with the duty to not knowingly, with wanton disregard, cause his life, health and safety to be placed in danger by intentionally and/or deliberately ignoring the known dangers to plaintiff that their actions or omissions placed him in.

109.   Defendants Alvarez and DOES 51-100 placed plaintiff in danger by the following acts and/or omissions:

    a.  By placing plaintiff, a non-violent, elderly, pre-trial detainee suffering from mental health issues, in a cell with Defendant Jackson, who was known to repeatedly display aggressive and combative behavior toward his cellmates, when Defendant Jackson should have been housed alone based on his prior, repetitive violent conduct;

    b.  By placing plaintiff, a non-violent, elderly, pre-trial detainee

40

suffering from mental health issues, in a cell with a violent

criminal under circumstances which were conducive to the

eruption of violence, including racial, age and physical strength

differences between Plaintiff and Defendant Jackson; and

c. Failing to properly classify Defendant Jackson after multiple

incidents of violent behavior directed toward his cellmates when

Defendant had reason to know of the prior violent tendencies and

the ability and authority to re-classify Defendant Jackson so as to

avoid any future harm being perpetrated by Defendant Jackson on

other inmates.

110.   Plaintiff is informed and believes that County of Riverside, Alvarez

and DOES 51-100 were aware of the threat that Defendant Jackson represented to

plaintiff based on Jackson's prior violent incidents and aggressive behavior

toward his cellmates, which was known to County of Riverside, Alvarez and

DOES 51-100  prior to placing plaintiff in the cell with Jackson.  County of

Riverside, Alvarez and DOES 51-100, intentionally, recklessly and with deliberate

indifference, failed to take any security measures to protect non-violent pre-trial

detainees with mental health issues like plaintiff, from being victims of violent

assault and battery while in their custody.

111.   Alvarez and DOES 51-100 had ample opportunity and resources to

41

intervene and prevent plaintiff's injuries by finding alternative housing for

Plaintiff Eddy Soriano, and was compelled to do so as a Sheriff deputy under the

laws of the State of California and under the Constitution of the United States of

America.  In deliberate indifference to the life and welfare of plaintiff, each said

Defendant intentionally and with deliberate indifference to the civil rights of

plaintiff, housed Plaintiff with Defendant Jackson thereby facilitating the attack

by Defendant Jackson on Plaintiff Eddy Soriano.

112.    In doing the acts complained of, Defendant Alvarez and DOES 51-

100  acted under the color of state law to deprive Plaintiff Eddy Soriano of certain

constitutionally protected rights including, but not limited to, the right not to be

deprived of life or liberty without due process of law, as guaranteed by the Fourth,

Fifth and Fourteenth Amendments to the United States Constitution.  The above

acts and omissions, while carried out under color of law, have no justification or

excuse in law, and instead constitute a gross abuse of governmental authority and

power, shock the conscience, are fundamentally unfair, arbitrary and oppressive

and unrelated to any activity which governmental officers may appropriately and

legally undertake in the course of protecting persons or property or ensuring civil

order.  The above acts and omissions were consciously chosen from among

various alternatives.

113.    In acting and failing to act as hereinabove alleged, Defendant

Alvarez and DOES 51-100, and each of them, were deliberately indifferent to the substantial risk that Jackson would assault and severely injure Plaintiff Eddy Soriano.

114.   As a proximate result of Defendant Alvarez and Does 51 – 100's wrongful conduct, Plaintiff Eddy Soriano suffered injuries and damages as set forth herein.

115.   The conduct of Defendant Alvarez and Does 51 – 100, and each of them, was intentional, malicious, willful, wanton and in reckless disregard of Plaintiff's constitutional rights and/or grossly negligent in that this conduct shocks the conscience and is fundamentally offensive to a civilized society, so as to justify the imposition of punitive damages against each of the foregoing individual defendants.

## EIGHTH CAUSE OF ACTION

**(State Law Claim for Negligence – Brought by Soriano and de Guzman Against Defendant Alvarez and Does 51-100)**

116.   Plaintiff Eddy Soriano and Plaintiff de Guzman reallege and incorporate by reference paragraphs 1 - 115 of this complaint.

117.   At all times mentioned herein, and under California Government Code Section 844.6(d), Alvarez and Does 51-100 were subject to a duty of due care to monitor, supervise and protect the life, health and safety of inmates of the

43

RPDC, including carrying out the terms and conditions of Plaintiff Eddy Soriano's confinement while at RPDC and protecting Plaintiff from inmate-on-inmate violence.

118.   On the day of the incident, Alvarez and Does 51-100 breached their duties in that they negligently failed to exercise due care in monitoring and supervising Plaintiff Eddy Soriano and Defendant Tyler Scott Jackson by the following acts and/or omissions:  failing to properly classify Soriano and Jackson such that both men were improperly placed in the same cell; by placing plaintiff, a non-violent, elderly, pre-trial detainee suffering from mental health issues, in a cell with Defendant Jackson, who was known to repeatedly display aggressive and combative behavior toward his cellmates; by placing plaintiff, a non-violent, elderly, pre-trial detainee suffering from mental health issues, in a cell with a violent criminal under circumstances which were conducive to the eruption of violence, including racial, age and physical strength differences between Plaintiff and Defendant Jackson; and by failing to properly re-evaluate the classification of Defendant Jackson after multiple incidents of violent behavior directed toward his cellmates.

119.   Plaintiff Eddy Soriano and Plaintiff Marites de Guzman allege on information and belief that at the time of the incident, Defendants Alvarez and Does 51-100 were agents and/or employees of Defendant County and in doing the

acts and omissions alleged herein, were acting within the course and scope of their employment with Defendant County.

120.   At all times relevant herein, the acts and omissions of Defendant Alvarez and Does 51-100, were a substantial factor in causing Plaintiff Eddy Soriano's harm.

121.   As a proximate result of Defendant Alvarez and Does 51-100's wrongful conduct, Plaintiff Eddy Soriano suffered injuries and damages as set forth herein, including permanent brain damage.

122.   At all relevant times herein, Plaintiff Marites de Guzman and Plaintiff Eddy Soriano were wife and husband.

123.   As a proximate result of Defendant Alvarez and Does 51-100's wrongful conduct, Plaintiff Marites de Guzman suffered a loss of consortium due to Plaintiff Eddy Soriano's injuries, since he is now in a permanent vegetative state and cannot communicate with or provide companionship to Plaintiff Marites de Guzman.

## **PRAYER**

1.   WHEREFORE, Plaintiffs pray for judgment against defendants, and each of them, jointly and severally, as follows:

   a.  For economic damages according to proof;

   b.  For non-economic damages according to proof;

45

c. Punitive damages against each of the individual defendants (Alvarez, Nantes, Chivas, Pinion, Sniff, Di Yorio; Ibarra; Gutierrez; Busby, Jackson, Meadows, Adams, Elliot, Tompkins, Mozingo and Irving and Does 26-125) according to proof;

d. Reasonable attorney fees and costs of suit pursuant to 42 U.S.C. 1988 where appropriate;

e. Prejudgment interest;

f. Costs of suit incurred herein and further relief as the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiffs respectfully demand that the present matter be set for a jury trial.

Dated:  February 8, 2017          \s_____
                                  Robert Trujillo, Esq.
                                  Attorney for Plaintiffs, Eddy Soriano by and through his Conservator, Sherly Tolentino and Marites De Guzman

Dated:  February 8, 2017          \s_____
                                  Melody Trujillo, Esq.
                                  Attorney for Plaintiffs, Eddy Soriano by and through his Conservator, Sherly Tolentino and Marites De Guzman

Dated:  February 8, 2017          \s_____
                                  Suzanne Skolnick, Esq.
                                  Attorney for Plaintiffs, Eddy Soriano by and through his Conservator, Sherly Tolentino and Marites De Guzman

46

1

2

3   Dated:  February 8, 2017                    \s_____

4                                              Lewis Khashan, Esq.

5                                              Attorney for Plaintiffs, Eddy Soriano by and
                                               through his Conservator, Sherly Tolentino and
6                                              Marites De Guzman

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' THIRD AMENDED COMPLAINT FOR DAMAGES, VIOLATIONS OF CIVIL RIGHTS

CASE NO.:  5:16-CV-155 BRO (SP)